No. 49,812

STATE OF KANSAS, *Appellee,* v. MILDA R. SANDSTROM, *Appellant.*

(595 P.2d 324)

Opinion filed May 5, 1979.

*Russell Shultz,* of Shultz, Fry, and Fisher, of Wichita, argued the cause and was on the briefs for the appellant.

*Gene M. Olander,* district attorney, and *Mark L. Bennett, Jr.,* special prosecutor, argued the cause, and *Curt T. Schneider,* attorney general, was with them on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Milda R. Sandstrom, was convicted of murder in the first degree (K.S.A. 21-3401). The factual circumstances surrounding the homicide are not directly involved in the appeal and need not be stated in great detail. Suffice it to say, the evidence presented in the case was undisputed that the defendant and her husband, Thad M. Sandstrom, had had an unsatisfactory and rather stormy marriage for several years. Mr. Sandstrom decided to file suit for divorce and did so while the defendant was visiting friends in Oklahoma. The defendant, receiving notice of the suit, returned to Topeka. While enroute she purchased a .32-caliber pistol and ammunition at Paul's Valley, Oklahoma. When she returned to her home in Topeka, she entered the house and shot her husband while he was in bed. At the time of the trial, the evidence was undisputed that the defendant had shot and killed her husband. The only defense presented to the charge was

that the defendant was legally insane at the time the homicide occurred. The issue of the defendant's sanity was hotly contested. The jury rejected the defense of insanity and found the defendant guilty of murder in the first degree. The defendant was sentenced to life imprisonment. Following her conviction and sentencing, and after her motion for a new trial was overruled, the defendant appealed to this court contending that she was denied a fair trial and alleging a number of trial errors.

The first point raised on the appeal is that the trial court erred in holding hearings in the absence of the defendant when the defendant had not waived her right to be present and her attorney had no authority to waive such right. This claim of error involves two hearings which were conducted by the district judge in the absence of the jury. The first hearing was on the defendant's motion for judgment of acquittal on the afternoon of December 1, 1977, after the State had rested its case. The jury was admonished and released to return to the court on the following Monday, December 5, 1977, at 9:00 a.m. The court, counsel for the parties, and the court reporter then retired to chambers for the presentation of the defendant's motion for judgment of acquittal. At this point it should be noted that, at the trial of the case, the State was represented by Mark L. Bennett, Jr., as special prosecutor, and by Gene M. Olander, district attorney of the Third Judicial District. The defendant, Milda R. Sandstrom, was represented by Robert D. Hecht, attorney-at-law, of Topeka. The record shows that after the judge and counsel, along with the court reporter, arrived in the judge's chambers the following proceeding took place:

"THE COURT: All right, we're in Chambers, and the State has rested their case, and Mr. Hecht has a motion.

"MR. BENNETT: Before we take up the motion, Judge, I think we ought to reflect on the record that the defendant is not here and that she has waived, by waiver of counsel, any right to be present.

"MR. HECHT: That's correct, Your Honor.

"THE COURT: All right.

"Following the argument upon the motion, the Court stated:

"THE COURT: Okay, I'll take it under advisement; and tomorrow afternoon, I'll get into this, and I'll let you know before the weekend. Thank you."

On the following Monday morning, December 5, 1977, at 8:45 a.m. an in-chambers hearing was held. Present were the trial judge and counsel for the parties. Also present was Gene Obley of the Shawnee County Department of Court Services. At the outset

of this hearing, the court announced that it overruled the defense motion for judgment of acquittal that had been argued and taken under advisement on December 1, 1977. The other matter to be considered involved certain conduct on the part of one of the jurors. At that point Mr. Bennett called the court's attention to the fact that the defendant was not present, making the following statement:

"MR. BENNETT: Before you get into that, again, the defendant isn't here, and I think just so there is no question—

"MR. HECHT: (Interrupting) She waives her right to be present.

"THE COURT: All right. . . ."

The trial court then placed on the witness stand Gene Obley, who testified in substance that one of the jurors had been making statements to several persons expressing her opinion as to the proper outcome of the Sandstrom case. It appears that the juror had been in psychiatric care at the Topeka State Hospital. According to Obley, the juror had made the statement that if she were tried for this identical crime she would be sent up and she felt that Mrs. Sandstrom should be sent up. An acquaintance of the juror told Obley that the juror was a very irresponsible person. Mr. Obley was interrogated by Mr. Hecht on behalf of the defendant. In response to a question from Mr. Hecht, he testified that the juror had expressed an opinion as to what the outcome of the trial should be. It also appeared that at the voir dire the juror had been asked if she or any member of her family had ever had any psychiatric treatment to which question she replied that she had not. The juror was then called into chambers to testify. Under interrogation by the court, she testified that she had been treated in the outpatient department of Topeka State Hospital. Following this testimony, the court announced that it was excusing the juror and proceeded to do so. The trial court then selected by lot, in accordance with the statute, one of the alternate jurors, who thereafter fully participated as a juror in the case until a final verdict was reached. It should be noted that Mr. Hecht, counsel for the defendant, never objected to the discharge of the juror. It was obvious that the juror was hostile to the defendant and had expressed an opinion that Mrs. Sandstrom should be convicted.

The defendant maintains on the appeal that the holding of the two hearings in the absence of the defendant was prejudicial and constituted reversible error since those proceedings took place in

the absence of the defendant. The defendant directs our attention to K.S.A. 22-3405, which governs the right of a defendant to be present at every stage of a trial in a felony case. The statute reads as follows:

"22-3405. **Presence of defendant.** (1) The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law. In prosecutions for crimes not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes.

"(2) The defendant must be present, either personally or by counsel at every stage of the trial of a misdemeanor case."

Counsel for the defendant cites a number of early Kansas cases holding that the right of a defendant in a felony prosecution to be present during the proceedings is one that cannot be waived by counsel without the consent of the defendant and that the defendant in a felony case must be present at a hearing on a motion to quash an indictment or information and also at a hearing to determine whether or not a mistrial should be declared because of the illness of a juror. *State v. Hansford,* 76 Kan. 678, 92 Pac. 551 (1907); *State v. Clifton,* 57 Kan. 448, 46 Pac. 715 (1896); *State v. Kendall,* 56 Kan. 238, 43 Pac. 711 (1895); *State v. Reed,* 53 Kan. 767, 37 Pac. 174 (1894); *State v. Smith,* 44 Kan. 75, 24 Pac. 84 (1890); *State v. Myrick,* 38 Kan. 238, 16 Pac. 330 (1888).

Each of the cases cited arose under G.S. 1949, 62-1411 of the old code of criminal procedure. That section provided as follows:

"62-1411. **Personal presence of accused.** No person indicted or informed against for a felony can be tried unless he be personally present during the trial; nor can any person indicted or informed against for any other offense be tried unless he be present, either personally or by his counsel."

It should be noted that this former statute did not provide that the trial could proceed in the absence of the defendant, when the defendant's absence was voluntary, as is now provided in K.S.A. 22-3405. The later Kansas cases under G.S. 1949, 62-1411 hold that, in spite of the statutory language, the trial could proceed in the absence of the defendant when the defendant voluntarily absented himself from the proceedings. *State v. Chuning,* 201 Kan. 784, 443 P.2d 248 (1968); *Cox v. Hand,* 185 Kan. 780, 347 P.2d 265 (1959); *State v. Maxwell,* 151 Kan. 951, 102 P.2d 109 (1940). All of these cases hold without equivocation that the

defendant in a felony proceeding may waive his right to be present at any stage of the trial and, when he voluntarily absents himself from a portion of the trial proceedings, he cannot justifiably claim trial error.

The most recent case on the subject, which arose under K.S.A. 22-3405(1), is *State v. Mantz*, 222 Kan. 453, 565 P.2d 612 (1977). Mantz was convicted of murder in the first degree and on appeal contended that he had been denied a fair trial because of an in-chambers conference between the court and counsel concerning instructions in the absence of the defendant. In *Mantz*, we recognized the general rule to be that a defendant's constitutional and statutory rights to be present at his trial do not encompass proceedings before the court involving matters of law. We stated that such rights are violated only if the defendant is absent when the jury is hearing the case or when he is prevented from attending such other proceedings where his presence is essential to a fair and just determination of a substantial issue. We construed K.S.A. 22-3405 to mean that the defendant must be present at all times *when the jury is present in the courtroom* except when the defendant is voluntarily absent, as set forth in the statute.

Under K.S.A. 22-3405, the defendant was entitled to be present at the hearing on her motion for judgment of acquittal and again at the hearing where inquiry was made as to the misconduct of one of the jurors. However, there was nothing to prevent the court from proceeding as it did in the absence of the defendant, provided the defendant had voluntarily absented herself from those proceedings. On the record from the trial court, we have no hesitancy in holding that the defendant did voluntarily waive her right to be present at the two hearings in question. The record before the trial court shows clearly that her counsel, Robert D. Hecht, a competent and able member of the Kansas Bar, advised the court that she had waived her right to be present. The record discloses that, at the time of the hearings, the defendant had been released on bond and was not in custody. There is nothing to show that she was prevented from being present or that she could not have been present had she desired to do so. Furthermore, it is clear from the record that the defendant, at her own request, did not appear at most of the pretrial proceedings and that in each instance Mr. Hecht advised the court that she had waived her right to be present.

There is included as an appendix to the appellant's brief an affidavit of Milda R. Sandstrom that states in substance that she had no knowledge of the hearing that took place on the afternoon of December 1, 1977, or of the hearing held on the following Monday, December 5, 1977, and that she did not waive her right to be present or give authority to her attorney to waive her right to be present at any hearing. In response thereto, the State has attached an affidavit of Robert D. Hecht, as an appendix to appellee's brief, in which Mr. Hecht states in substance that Mrs. Sandstrom advised him that she did not wish to be present at hearings any more than was absolutely necessary and that, if her presence was not needed or required by him in the preparation of her defense, she did not wish to be present. It is further stated in the affidavit that Mrs. Sandstrom authorized him to conduct matters in her absence whenever, in his professional discretion, her presence was not deemed to be necessary. He further states that, in the absence of such authority, he would never have permitted, without objection, any proceeding to have occurred either in-court or in-chambers without her presence.

We cannot consider these affidavits. They were never brought to the attention of the trial court. It is not the function of this court on a direct appeal in a criminal case to consider matters which were not presented to the trial court and which are outside of the record. On the basis of the record now before us, it is undisputed that the defendant through her counsel waived her right to be present at the hearings held on December 1, 1977, and December 5, 1977. There is no showing that defense counsel ever presented a motion for a mistrial or to discharge the jury after the juror was released by the trial court and the alternate juror selected by lot to sit in accordance with statutory procedures. The defendant does not maintain on this appeal that the trial court erred in denying her motion for a judgment of acquittal at the close of the State's evidence. The defendant does not contend on this appeal that the trial court erred in discharging the juror who had expressed an opinion that the defendant should be convicted and imprisoned. We do not see how the defendant could have been prejudiced in any way by her absence during the two hearings. Under all the circumstances we find the defendant's first point raised on the appeal to be without merit.

The defendant's next point is that the trial court erred in

allowing Mark L. Bennett, Jr., to appear as special prosecutor over the objection of the defendant and without requiring the special prosecutor to prove his authority to act as such. On September 21, 1977, prior to trial, the defendant filed a motion requiring Mr. Bennett to produce or prove his authority to appear as attorney in the action. The motion was argued before Judge Michael A. Barbara who, after affording defendant a hearing, denied the motion. Judge Barbara wrote a letter to the district attorney and defendant's counsel in which the judge stated as follows:

"Request for proof of authority of Mr. Bennett is denied. K.S.A. 19-717 provides that 'the prosecuting witness . . . may employ an attorney to assist the county attorney . . . .'.

"Here the complaining or prosecuting witness, Mr. Sandstrom is deceased. The defendant, Mrs. Sandstrom is charged with his murder. A brother of the deceased employed Mr. Bennett. The brother falls within the meaning of the 'prosecuting witness' under these facts."

It appears from the record that Mr. Bennett was employed as special prosecutor by Gus Sandstrom, the brother of the deceased. Gus Sandstrom was listed as a prosecution witness on the information and, even though he was not used as a witness during the course of the trial, he was closely affected and aggrieved as a result of the killing of his brother. We have no hesitancy in holding that Gus Sandstrom was a "prosecuting witness" within the meaning of K.S.A. 19-717. It has long been the rule of law in this state that the family of the deceased in a murder prosecution is entitled to retain special counsel to assist the local prosecutor in the preparation of the case. *State v. Wilson,* 24 Kan. 189 (1880). In *Wilson* the special prosecutor was employed by the father of the deceased, who compensated the special prosecutor for his services. Here the appointment of Mr. Bennett as special prosecutor was made with no objections from the district attorney. The district attorney participated fully in the prosecution and there is nothing to show that he was not in full control of the case. Under the circumstances, we find no error in permitting Mr. Bennett to serve as special prosecutor.

The third point raised on the appeal is that the trial court erred in ordering the defendant's counsel to turn over to the prosecution all statements of witnesses and reports of interviews with prospective defense witnesses in contradiction of the statutes controlling discovery in criminal cases. The record shows that, at

the commencement of the trial on request of defense counsel, the trial court ordered the prosecution to turn over to the defendant copies of the statements of all witnesses or reports of interviews of all persons whom the State intended to call as witnesses during the course of the trial. It was further ordered that the statements and reports be delivered to counsel for the defendant before each witness was called to the stand rather than waiting until each witness had testified, in order to avoid the necessity of a recess after each prosecuting witness's testimony and so that counsel for the defendant would have time to review the statements before conducting his cross-examination. The statements referred to in the trial court's order were delivered to the defendant's counsel. The State then proceeded to present its evidence. The witnesses for the prosecution were cross-examined by defense counsel and the State then rested its case. At the close of the State's case, the prosecution orally moved the court for a similar order requiring the defendant's counsel, prior to the commencement of the defendant's case, to provide the State with any and all copies of statements that defense counsel had obtained from any of the witnesses that he intended to produce or any narrative reports of interviews with witnesses that were going to testify for the defense in the case. After arguments of counsel, in which defense counsel objected to the production of the statements and reports, the trial court sustained the State's motion and ordered that defense counsel deliver all the requested statements and reports to the prosecution prior to the defense's calling its witnesses to the stand.

The defendant contends that the order of the trial court was error and prejudiced her in her defense. We agree that the order of the trial court was erroneous and not authorized under the Kansas statutes relating to the discovery of statements and reports in a criminal proceeding. The two statutes governing criminal discovery of statements and reports are K.S.A. 22-3212 and K.S.A. 22-3213. The statutes provide in part as follows:

"22-3212. **Discovery and inspection.** (1) Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph any relevant (*a*) written or recorded statements or confessions made by the defendant, or copies thereof, which are or have been in the possession, custody or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney; (*b*) results or reports of physical or mental examinations, and of scientific tests or

experiments made in connection with the particular case, or copies thereof, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney; (c) recorded testimony of the defendant before a grand jury or at an inquisition; and (d) memoranda of any oral confession made by the defendant and a list of the witnesses to such confession, the existence of which is known, or by the exercise of due diligence may become known to the prosecuting attorney.

"(2) Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies, or portions thereof, which are or have been within the possession, custody or control of the prosecution upon a showing of materiality to the case and that the request is reasonable. Except as provided in subsections (1) (b) and (1) (d), this section does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by officers in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses (other than the defendant) except as may be provided by law.

"(3) If the court grants relief sought by the defendant under subsection (1) (b) or subsection (2) of this section, it may, upon motion of the prosecution, condition its order by requiring that the defendant permit the attorney for the prosecution to inspect and copy or photograph scientific ·or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, *which the defendant intends to produce at the trial,* upon a showing of materiality to the case and that the request is reasonable. Except as to scientific or medical reports, this subsection does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by prosecution or defense witnesses, or by prospective prosecution or defense witnesses, to the defendant, his agents or attorneys.
.   .   .   ." (Emphasis supplied.)

"22-3213. **Demands for production of statements and reports of witnesses.** (1) In any criminal prosecution brought by the state of Kansas, no statement or report in the possession of the prosecution which was made by a state witness or prospective state witness (other than the defendant) shall be subject of subpoena, discovery, or inspection until said witness has testified on direct examination at the preliminary hearing or in the trial of the case.

"(2) After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(3) If the prosecution claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the prosecution to deliver such statement for the inspection of the court *in camera.* Upon such delivery the court shall excise the portions of such statement which do not relate to the subject

matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the prosecution and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

"(4) The term 'statement,' as used in subsections (2) and (3) of this section in relation to any witness called by the prosecution means—

"(*a*) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(*b*) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement."

It should be noted that K.S.A. 22-3212(3) provides for a limited discovery by the prosecution only if the defendant has been granted an opportunity to inspect and copy or photograph under (1) (*b*), results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case or under subsection (2), books, papers, documents, tangible objects, buildings or places, or copies, or portions thereof, upon a showing of materiality to the case and that the request is reasonable. It must be emphasized that, under K.S.A. 22-3212(3), the discovery by the prosecution is limited to the inspection of and copying of those specified items *"which the defendant intends to produce at the trial,"* upon a showing of materiality to the case and that the request is reasonable. Subsection (3) then states unequivocally that *"[e]xcept as to scientific or medical reports,"* this subsection does not authorize the discovery or inspection of *reports,* memoranda, or other internal defense documents made by the defendant, or *his attorneys or agents* in connection with the investigation or defense of the case, *or of statements made by the defendant or by prospective defense witnesses,* to the defendant, his agents or attorneys. It is crystal clear that K.S.A. 22-3212 did not authorize the order of the trial court directing defense counsel to deliver the statements of its witnesses, in whatever form, to the prosecution for discovery.

While the prosecution was entitled under the statute to the medical reports relating to the defendant's mental condition, that statute did not authorize the discovery of the defense witnesses' statements or reports of interviews with defense witnesses.

K.S.A. 22-3213 relates to the disclosure of statements and reports of witnesses in criminal cases. That section is patterned after title 18, section 3500, of the United States Code, commonly known as the Jencks Act. It should be noted that the Kansas statute provides for discovery by the *defendant* of any statements or reports made by a prosecution witness *after* the witness has testified on direct examination either at the preliminary hearing or at the trial. The statute does *not* provide for any pretrial discovery of statements of witnesses by the State. In *State v. Humphrey*, 217 Kan. 352, 537 P.2d 155 (1975), we stated that the discovery provisions under the criminal code should be liberally construed and the scope of discovery should be as full and complete as is reasonably possible under the circumstances. No matter how liberally construed, however, the criminal discovery provisions contained in K.S.A. 22-3212 and K.S.A. 22-3213 do not provide for the discovery of a statement made by a witness *prior* to his testifying at the preliminary hearing or at trial. In fact, there is no express provision permitting the State to discover the statement of a defense witness either prior to the trial or after the defense witness has testified upon direct examination.

The State in its brief relies upon *United States v. Nobles*, 422 U.S. 225, 45 L.Ed.2d 141, 95 S.Ct. 2160 (1975). In *Nobles,* the defendant was being tried in the United States District Court on charges arising from the armed robbery of a federally insured bank. Two key prosecution witnesses had identified the defendant as the robber. Defense counsel sought to impeach the credibility of those key witnesses by offering the testimony of a defense investigator regarding statements previously obtained from those witnesses by the investigator. These statements had been reduced to writing and were contained in the investigator's report in the possession of defense counsel. When the investigator was called as a witness, the district court stated to defense counsel that a copy of the investigator's report, inspected and edited by the court *in camera* so as to excise references to matters not relevant to such statements, would have to be submitted to the prosecution for inspection at the completion of the investigator's

testimony. When defense counsel stated he did not intend to produce the report, the trial court ruled that the investigator could not testify about his interviews with the witnesses. On appeal, the Court of Appeals reversed, holding that both the Fifth Amendment and Federal Rules of Criminal Procedure No. 16 prohibited the disclosure condition imposed (501 F.2d 146). The United States Supreme Court held that the federal district court had inherent power to require production of the previously recorded witness statements in order to facilitate full disclosure of all relevant facts. The Supreme Court stated that the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at the trial. The court further observed that Federal Rule No. 16 addresses pretrial discovery only and not trial practice. As to the work product privilege, the court held that the privilege was not absolute and was waived after the investigator took the stand as a witness with respect to any matters covered in his testimony.

We have concluded that *Nobles* is distinguishable from the case now before us. In *Nobles,* the court ordered defense counsel to produce the investigator's report only *after* the investigator had testified on direct examination. In *Nobles,* the trial court did not order defense counsel to produce the report or any statements prior to the calling of the investigator to the stand as a witness. In the case now before us, the trial court issued a blanket order directing defense counsel to produce statements of any witness that was going to testify for the defense in the case. We hold that there was no statutory authorization for compelling defense counsel to furnish statements of his witnesses or reports of interviews prior to the time the defense commenced the introduction of its evidence.

We have concluded, however, that the error of the trial court in directing defense counsel to furnish statements of its witnesses and reports of its investigators was not prejudicial under the circumstances of this case. As noted above, there was no dispute as to the factual circumstances surrounding the homicide. The only issue in the case was the defendant's sanity at the time of the killing. The State was entitled, under K.S.A. 22-3212, to any *medical* reports concerning the defendant's mental state at the time the homicide occurred. We have before us in the record all

the reports, statements, and memoranda of interviews prepared by defense counsel and his agents in connection with the investigation of the Sandstrom case. In a general way, it may be stated that these materials concern the prior conduct of the deceased, Thad M. Sandstrom, or of the defendant, or observations of various persons made in regard to the mental condition of the defendant both before and after the homicide occurred. We find nothing in the record to show that any of the statements were used for the purpose of impeaching or discrediting any witnesses called by either of the parties. There is nothing to indicate that any of the reports or statements furnished information which enabled the State to obtain evidence to establish the guilt of the defendant. Although the action of the trial court was erroneous in ordering production of the statements and reports by the defense counsel, we find that such action in no way prejudiced the right of the defendant to a fair trial and we decline to reverse the case on this point.

The defendant's fourth point is that the trial court erred in refusing to strike the jury array. By motion filed on November 10, 1977, counsel for defendant challenged the jury array and moved the court for an order striking all members of the jury panel scheduled to appear on November 14, 1977. The basis of the challenge was that the jury was not randomly selected by a judge of the district court, by a clerk of the district court, or by any person authorized by law to select prospective jurors, and that many members of the panel were excused without legal justification. On November 14, 1977, a hearing was held on the motion at the completion of which the trial court overruled the motion. In announcing his decision, Judge Vickers announced that the jury selection process utilized in the Sandstrom case was that which had been regularly followed for a number of years. In this regard the manner of selection of jury panels in Shawnee County is provided for in Rule 3.401 of the Rules of the Third Judicial District. It provides:

"*Selection of juries.* The following procedure shall be used for the selection of juries:

"1. At such times the court, or a division thereof, deems it necessary to secure a panel of jurors to serve herein, said court as jury commissioner, shall direct that a sufficient number of jurors be selected from the computer program used by the county from voter registration records and enumeration or census records of the county by random selection.

"2. The list of names so selected, and any additional names drawn herein, shall be certified by the jury clerk to the clerk. The jury clerk shall assist the commissioner in the preparation, drawing and maintenance of a record of such jury panels and by performing such additional duties as may be directed by the commissioner.

"3. At least fifteen (15) days before the attendance date of a jury panel, the court shall summon the persons so selected by mailing a written notice to each such person by first class mail postage prepaid.

"4. In all cases where an insufficient number of jurors appear or if a panel be exhausted by challenge or otherwise before the jury is sworn, the court may order the sheriff or the clerk to summon a sufficient number of other persons to complete the jury. The court may order such additional members to be summoned within a reasonable time prior to attendance date."

It should be noted that Shawnee County, under the authority of K.S.A. 43-107, has appropriate base information programmed as a part of its computer operations. The names contained in the computer for selection of jurors are drawn from the voter registration and enumeration or census records of the county by random selections. A district judge is designated as jury commissioner, whose responsibility it is to see that jury panels are selected for use in the various divisions. This was the method used for the selection of the jury array that tried the Sandstrom case. Jean Jones, the jury coordinator for the Third Judicial District, testified that the jury array for the Sandstrom case was summoned in a special panel for the purpose of serving in that case or at some deferred date. She testified that the list was obtained from the jury commissioner's office. At the close of her testimony, she testified that the list came from Washburn University, but did not specify with particularity Washburn's position in the process. The jury selection process used in Shawnee County is discussed in depth in *State v. Campbell,* 217 Kan. 756, 539 P.2d 329 (1975). Following *Campbell,* the jury list included in the computer was expanded to include names drawn from the enumeration and census records of the county. The various components in the formula used to select a jury list are discussed at page 759 of the opinion. The selection of a jury list by computer is authorized by K.S.A. 43-107 and K.S.A. 43-163, which were enacted effective July 1, 1971. Pursuant to those statutes, the judges of the Third Judicial District by local Rule 3.401 provided the method for selection of jury panels directly from the computer without the necessity of drawing cards from the wheel manually. In *State v. Campbell,* this court approved the method of jury

selection used in Shawnee County and we see no reason to change our ruling in that regard. As pointed out in *Campbell,* no one arbitrarily chose which person or persons on the voter registration records would be selected for the jury lists. Neither bias nor purpose tainted the method chosen. The entire jury list as a group was selected at random. We fail to see how any prejudice could have resulted from the jury selection process accomplished pursuant to Rule 3.401. We also have no hesitancy in holding that there is nothing in the record to show that in selecting jurors or in excusing certain jurors there was any systematic exclusion of members of any particular class from jury service. Furthermore, there is no showing that the defendant was prejudiced in any way by the method used in selecting the trial jurors. *State v. Roth,* 207 Kan. 691, 486 P.2d 1385 (1971).

The last point raised by the defendant is that the trial court erred in instructing the jury in accordance with the so-called *M'Naghten* test of legal insanity instead of using the test recommended by the American Law Institute. In the recent decision of this court in *State v. Smith,* 223 Kan. 203, 574 P.2d 548 (1977), the majority of the court, in a comprehensive opinion, rejected the American Law Institute test and chose to retain the *M'Naghten* test. In *Smith,* two of the justices dissented. The majority of the present court are still of the opinion that a correct result was reached in *State v. Smith* and that the *M'Naghten* rule should be followed in Kansas. The court, therefore, rejects the contention of defendant that it was error for the trial court to instruct the jury on the *M'Naghten* test for legal insanity.

The judgment of the district court is affirmed.