(825 P.2d 541)
No. 66,597

STATE OF KANSAS, *Appellee*, v. RICHARD SMITH, *Appellant*.

Opinion
filed February 7, 1992.

*William L. Fry*, of William L. Fry, P.A., of Wichita, for the appellant.

*Michael E. Cleary*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, C.J., ELLIOTT, J., and NELSON E. TOBUREN, District Judge, assigned.

BRISCOE, C.J.: Richard Smith appeals from a jury conviction of one count of rape (K.S.A. 21-3502[1][a]). He alleges several trial errors denied him a fair trial and that his conviction violates constitutional provisions regarding double jeopardy. He also challenges the jury selection process. After considering all of the issues raised, we affirm.

I. Double Jeopardy

Smith's jury trial began on April 24, 1990, with the selection of 12 jurors to hear the case. The jurors were impaneled and sworn and some evidence was taken before the court granted a defense motion for mistrial because the trial judge had incorrectly limited the defense to six peremptory challenges instead of the statutorily required eight. See K.S.A. 22-3412(1)(b). The second trial began on August 7, 1990, and ended two days later with Smith's conviction of one count of rape. Smith contends the second trial violated his constitutional right to be free from double jeopardy.

A subsequent prosecution is barred under K.S.A. 21-3108(1)(c) if jeopardy has attached (the jury is impaneled and sworn) and a trial is terminated without the consent of the defendant. Exceptions exist if trial is terminated because of illness or death of an indispensable party, if the jury cannot agree, or if it is impossible for the jury to arrive at a verdict. K.S.A. 21-3108(1)(c)(i)-(iii). Here, jeopardy had clearly attached in the first proceeding because the jury was impaneled and sworn. Thus, the question is whether the trial terminated with or without Smith's consent.

Smith acknowledges the general rule that a second trial does not violate a defendant's double jeopardy rights when the first

trial is terminated because of some action by the defendant or the conviction is set aside by defendant's appeal or motion. See *Price v. Georgia*, 398 U.S. 323, 26 L. Ed. 2d 300, 90 S. Ct. 1757 (1970). He also acknowledges that a retrial is possible after a mistrial is entered *without* the defendant's consent if the trial judge exercised sound discretion in determining that a mistrial was a manifest necessity or public justice required it. See *State v. Crowley*, 220 Kan. 532, 534-35, 552 P.2d 971 (1976). However, Smith argues his rights were not protected because he was not personally given the option to proceed with the original jury or to have the court declare a mistrial. Essentially, he argues he did not consent to the granting of the mistrial, although his attorney did so on his behalf by filing the motion.

Nothing in the record indicates whether Smith was personally given the opportunity to consent to the mistrial or to withhold his consent. Even if he did not consent, the tactical decision of whether to go ahead with the first jury or to seek a mistrial is within his attorney's discretion, after consultation with his client. A defendant in a criminal case has the ultimate authority to determine how to plead, whether to waive a jury trial, and whether to testify. Model Rules of Professional Conduct 1.2(a) (1991 Kan. Ct. R. Annot. 229). Otherwise, tactical decisions are largely up to the attorney. Comment to MRPC 1.2 (1991 Kan. Ct. R. Annot. 230). In the absence of any evidence that Smith desired to proceed with the first trial, it is presumed he consented to the mistrial and his double jeopardy argument has no merit.

Even if Smith's personal consent were required before his counsel could request a mistrial, the trial court properly terminated the first proceeding. K.S.A. 22-3423 provides in relevant part:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

"(a) It is physically impossible to proceed with the trial in conformity with law; or

"(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial."

Here, the court did not abuse its discretion in declaring a mistrial to terminate a proceeding that would have produced a verdict that one of the parties could upset at will. The court's

failure to allow Smith a proper number of peremptory challenges made it "physically impossible to proceed with the trial in conformity with law." K.S.A. 22-3423(1)(a).

## II. Fair Trial—Ineffective Assistance of Counsel

Smith contends that several errors deprived him of his constitutional right to a fair trial. He essentially argues his appointed counsel was ineffective and points to four instances to illustrate this claim.

To prove a claim of ineffective assistance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances and that, but for the ineffective assistance, a reasonable probability existed that the result in the case would have been different based on a consideration of the totality of the evidence. *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985).

### a. *Pretrial bond conditions*

First, Smith argues two pretrial bond conditions improperly limited his ability to investigate the case. The journal entry of bond reduction contains the following conditions:

"3. [Smith] is not to discuss the alleged offense, with anyone except for immediate family of Defendant, unless his attorney is present.

"4. The potential witnesses shall be talked to only in the presence of their attorney."

Smith alleges these conditions were improper and unduly restricted his investigation of the case against him.

Condition 4 certainly goes beyond the authorized bond conditions listed in K.S.A. 1991 Supp. 22-2802(1). Literally read, it prohibits Smith from speaking to any potential witness unless the potential witness' attorney is present. However, Smith has not shown how this error affected his attorney's ability to investigate the case. The attorney's billings show that he contacted several potential witnesses prior to trial and conferred with the prosecutor on numerous occasions. Further, the case essentially came down to the issue of consent. The only witnesses who reasonably could testify in this regard were Smith and the victim, and Smith knew the victim would testify that she did not consent. Defense counsel's failure to object to the language in the conditions does not fall below an objective standard of reasonableness.

### b. *Composition of jury panel*

Smith next alleges that his attorney should have objected to the makeup of the jury panel. He argues the lack of minorities on the panel should raise a question in any attorney's mind as to whether a black defendant could get a fair trial. Whether the jury was improperly selected in this case is addressed on its merits in issue III below.

c. *Failure to interview and call potential witnesses*

Smith also contends his counsel should have interviewed and called several defense witnesses. Smith filed nine affidavits in support of his motion attacking the judgment. Basically, the affidavits attested to Smith's good character and the possibility that Smith was not the instigator. As the State properly points out, trial strategy is left up to the trial attorney, and the character evidence Smith sought to have admitted may not have helped but may actually have harmed him by opening his character to cross-examination.

The billings submitted by defense counsel indicate he interviewed several potential defense witnesses, although he called only one at trial. That witness basically testified that he saw Smith and the alleged victim arrive at school just after the rape allegedly occurred and that the victim appeared to be acting normally.

Counsel's assistance as regards the interviewing and calling of witnesses was not ineffective. Smith admitted he and the victim had had intercourse. Therefore, the only issue at trial was consent. The victim testified she did not consent and several prosecution witnesses testified that she showed physical signs consistent with that of a rape victim shortly after the rape allegedly occurred. Further, Smith's statements to police officers did not clearly indicate that the victim consented. Counsel's failure to present evidence of Smith's good character did not fall below an objective standard of reasonableness, and, in any event, no reasonably probability exists that the result would have been different based on a totality of the evidence.

d. *Speedy trial*

Lastly, Smith contends he was denied the constitutional right to a speedy trial and that his counsel was ineffective because this issue was not raised.

K.S.A. 22-3402(2) generally requires trial to begin 180 days following arraignment for persons out on an appearance bond.

Subsection (4) of the statute provides: "In the event a mistrial is declared . . . the time limitations provided for herein shall commence to run from the date the mistrial is declared." Here, the trial court declared a mistrial on April 24, 1990, and the second trial began on August 7, 1990, 105 days later. Smith was not denied the right to a speedy trial, and no ineffective assistance of counsel is shown.

III. Jury Selection Process

Smith contends the Harvey County jury selection system is deficient in several respects, all of which deprived him of his right to be tried by a jury of his peers. He also contends his counsel was ineffective because he failed to object to the makeup of the jury panel. Because this claim is included in Smith's ineffective assistance of counsel claim, we will address the merits of this issue and not find the issue is waived because of defense counsel's failure to timely object.

The legislature's stated purpose in adopting the Petit and Grand Jurors Act is set out in K.S.A. 43-155:

"The public policy of this state is declared to be that jury service is the solemn obligation of all qualified citizens, and that excuses from the discharge of this responsibility should be granted by the judges of the courts of this state only for reasons of compelling personal hardship or because requiring service would be contrary to the public welfare, health or safety; *that all litigants entitled to trial by jury shall have the right to juries selected at random from a fair cross section of the community* in the district wherein the court convenes; and that all citizens shall have the opportunity to be considered for service on juries in the district courts of Kansas." (Emphasis added.)

Generally, the Act requires the "jury commissioner" to prepare a "jury list" of those persons in the county eligible for jury service. K.S.A. 43-162. A "jury commissioner" is defined as "the judge or judges of the district court in each county, or a person appointed to serve as jury commissioner by a district court." K.S.A. 43-157(b). A "jury list" is "a list of those persons qualified for jury duty in a county as such list is prepared in accordance with this act." K.S.A. 43-157(a). K.S.A. 43-156 sets out a person's right to serve on a jury:

"No person shall be excluded from service as a grand or petit juror in the district courts of Kansas on account of race, color, religion, sex, national origin, or economic status. Every juror, grand and petit, shall be a citizen

of the state, resident of the county and possess the qualifications of an elector as now, or in the future established."

Jury lists may be compiled from one of several sources or a combination of those sources. Sources used in compiling jury lists are governed by K.S.A. 43-162:

"Jury lists shall be prepared from voter registration records of the county, lists of licensed drivers residing in the county or enumeration or census records for the county, in accordance with the intent and purposes of this act. On and after January 1, 1985, lists of holders of state-issued nondrivers' identification cards who reside in the county may also be used in the preparation of jury lists. Jury lists prepared from multiple sources may be used if one or more of the foregoing records is used as a material source in preparing the list."

Once a jury list is compiled, a jury panel is drawn from the list by use of a "wheel," defined as "a container in which may be placed cards bearing the names of persons on the jury list of a county." K.S.A. 43-157(c). The jury commissioner is required to place the name of each person on the jury list on a card of uniform kind and size, and those cards are then mixed in the wheel. K.S.A. 43-163. The district judge, or a person appointed by the court for such purpose, then draws names from the wheel. K.S.A. 43-164. "The person drawing names from the wheel shall be so situated that he is unable to see the name on any card before it is drawn." K.S.A. 43-164. Alternative methods for drawing panels exist:

"In the event that a county has appropriate base information programmed as part of its computer operations so that it might comply with the spirit of the jury selection laws of Kansas the jury commissioners may by local rule provide alternate methods for securing jury panels directly from the computer without the necessity of drawing names or cards from a wheel manually." K.S.A. 43-163.

Here, Smith contends Harvey County's jury selection process fails to follow the stated public policy. He argues that all qualified citizens are not considered, but only those who register to vote. He also points out there were no blacks on the jury panel.

In *State v. Campbell*, 217 Kan 756, 767, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975), the court held the use of voter registration records as the sole source for jury lists results in juries selected from a fair cross-section of the community and is not statutorily or constitutionally invalid. The court reiterated this

holding in *State v. Sandstrom*, 225 Kan. 717, 730-31, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979). Smith acknowledges these cases in his brief, but suggests that a 1983 amendment to 43-162 was intended to limit the effect of the cases. He alleges the statute now requires multiple sources for jury lists. We disagree.

A review of the legislative history of 43-162 does not justify Smith's conclusion. As originally adopted, the statute stated: "Jury lists shall be prepared from voter registration records *and* enumeration or census records." (Emphasis added.) L. 1971, ch. 176, § 8. The 1981 legislature amended the statute by changing the "and" to "or," and adding: "Jury lists prepared from multiple sources may be used if one or more of the foregoing records is used as a material source in preparing the list." L. 1981, ch. 202, § 1. The present statute, as amended in 1983, is quoted above.

Had the legislature intended to limit the effect of *Campbell* and *Sandstrom*, it could have easily required that jury lists be prepared from voter registration records and driver's license lists, and could have deleted the sentence that states lists prepared from multiple sources may be used if one or more of the designated records is used as a material source. The clear language of the present statute leads us to conclude that use of voter registration lists as the sole source of jury lists is not statutorily or constitutionally invalid.

Smith also argues the deputy clerk of the district court makes nearly all decisions as to which potential jurors to excuse and that Harvey County's failure to use a jury wheel is a fatal flaw in the selection of the jury panel.

Highly summarized, the evidence showed the county's jury lists are generated from the voter registration list and no other source is considered. The county has been receiving "mag tape[s]" of licensed drivers since 1988 and expects to add those names to the list of persons for jury service. The jury list is generated by a computer, but it is unclear as to how the computer selects the individuals who appear on the list. The jury commissioner testified that the voter registration list is constantly updated and, when a jury list is needed, the number of persons on the voter registration list is divided by the number of jurors needed, and the machine selects names for the jury list, apparently according to

a preset factor. The jury list for the court term in which Smith's case was heard contained 400 names.

After receiving the jury list, the deputy clerk mails a summons for jury duty and an attached questionnaire to each person on the list. The clerk's internal instructions provide that persons are excused if they will be on vacation, are ill, or have a death in the family and that any other excuse is considered by the judge. As questionnaires are returned, the clerk arranges them alphabetically in a stack. When asked to describe how she would pick 40 names for a jury panel, the clerk testified: "I just start at the top of the stack and pull one, skip a few, pull another, skip a few, so that I get some of each alphabet."

Smith is correct in his contention that Harvey County's jury panel selection process does not comply with the statute. K.S.A. 43-163 clearly requires use of a wheel or a computer selection program. However, this fact in itself did not deprive Smith of the right to have his jury drawn "at random from a fair cross section of the community." K.S.A. 43-155. The list was drawn at random from a computer listing of registered voters. From that list, the clerk drew the panel from the returned questionnaires. The clerk testified that she did not consider age, race, or income, nor did she consider whether she personally knew or disliked any of the potential jurors.

Smith makes much of the fact that the county has no local rule governing a computer method of jury selection. This argument is without merit. According to 43-163, a local rule is only required where the *jury panel*, not the jury list, is selected by computer.

In *Sandstrom*, 225 Kan. at 731, the court pointed out that no one arbitrarily chose which persons would be on the jury list, there was nothing in the record to show systematic exclusion of members of any particular class, and defendant failed to show any prejudice by the method used. Such is the case here as well. While Smith does not prevail on this issue because there is nothing in the record to show that anyone arbitrarily chose which persons would be on the jury list or jury panel, that there was a systematic exclusion of members of a particular class from the jury list or jury panel, or that he was prejudiced by the method used to select the jury list or jury panel, the district court should

take appropriate action to comply with the jury panel selection procedure set out in 43-163.

Smith argues the method of granting excuses from jury service in Harvey County violates 43-155. The statute requires that *judges* grant excuses from jury service, and only for the reasons set out in the statute. The record in this case reveals that the clerk grants excuses based upon internal operations instructions. These instructions appear to be nothing more than a checklist generated by the clerk or her predecessor.

While the procedure for granting excuses is in violation of 43-155, Smith does not prevail on this issue for the same reasons he does not prevail on his argument concerning selection of the jury panel. Smith has failed to establish that the clerk's method of excusing jurors resulted in arbitrary selection of who would serve on the jury, systematic exclusion of members of a particular class, or prejudice to him.

The internal feature of the procedure used by the clerk creates the appearance that the clerk decides whom to excuse. District court judges wishing to grant excuses for frequently recurring reasons, as provided in 43-155, should do so by published local court rules. See Standard 6(d), Standards Relating to Jury Use and Management (1991 Kan. Ct. R. Annot. 58-59) (judges of each judicial district should adopt guidelines for determining requests for excusal and deferral from jury service).

Having determined that Smith was not prejudiced by the county's failure to follow the procedures set out in 43-155 and 43-163, his claim that his counsel was ineffective for failure to raise these issues must also fail.

Affirmed.