No. 47,748

STATE OF KANSAS, *Appellee*, v. HOWARD RUSSELL, *Appellant*.

(536 P. 2d 1392)

Opinion filed June 14, 1975.

*J. Stephen Nyswonger*, of Garden City, argued the cause and was on the brief for the appellant.

*Carl B. Anderson*, county attorney, argued the cause, and *Curt T. Schneider*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: The issue in this case is whether a creditor may lawfully use the threat of force to collect a debt he honestly believes is due him. The defendant Howard Russell used that means of collecting $1,883.57, and was charged with a class D felony, namely, theft by threat in violation of K. S. A. 21-3701 (*c*). He was convicted by the trial court sitting without a jury and has appealed.

In May, 1973, defendant contracted with Andrew Koehn to finish Koehn's new farm home in Haskell County. The work was completed during the first part of August, 1973, and defendant thereafter made several attempts to collect the balance he claimed for extra work ordered orally by Koehn and his wife. Each time he was put off by Koehn, who made various excuses for not paying and professed to be dissatisfied with the quality of the work. Finally defendant sent a certified letter containing the bill to Koehn, who refused to accept delivery. The defendant thereupon decided to exercise self-help.

On December 20, 1973, accompanied by his son and Harvey

Wendel, Jr., a 17 year old, 6'4", 225-pound friend, defendant proceeded by car to Koehn's home. While defendant and his son ducked down in the car Wendel went to the door and told Koehn he was out of gas. During this discussion Wendel employed a fictitious name. Koehn finally took Wendel in his truck to his machine shed, about a mile from the home. While Koehn searched for a gas can, father and son entered the shed and the trap was sprung. The two young men stood with the defendant, between Koehn and the only exit, while the defendant presented his bill and demanded payment. He allowed as how he would get his money "one way or the other."

There is disputed testimony as to the exact conversation, but there is no question but that it was heated. Koehn testified that he was scared, and finally wrote the defendant a check for the $1,883.57 demanded. As the defendant and his companions left they cut Koehn's telephone wires, "to delay him from calling the bank." They proceeded directly to the bank in Garden City, where defendant cashed the check and gave each of the boys $50.00.

According to his wife, when Koehn returned to his home from the shed he appeared frightened. At first he refused to make any attempt to stop payment on the check or to report the defendant's visit to the authorities. Defendant had threatened, he said, to "send some more guys out" if he did. After some discussion Mrs. Koehn attempted to call the sheriff, but found the telephone dead. She went to her parents' home some mile and a half away and made the call from there. This prosecution followed.

The key complaint of the defendant on appeal is that there was insufficient evidence to support the trial court's finding of guilt in view of his *bona fide* claim to the money.

He bases this claim primarily upon *State v. Goldsberry*, 160 Kan. 138, 160 P. 2d 690. There two ranchers disputed over the ownership of certain specific cattle in one of their pastures. Goldsberry entered the property of the other rancher and took the disputed cattle in order to have them shorn to determine their brands. When the other rancher attempted to stop Goldsberry he was threatened with a gun. Goldsberry was later charged with grand larceny. This court reversed his conviction and in doing so stated:

"An intent to steal property and a *bona fide* claim of the right to take it are incompatible. One who takes property in good faith under fair color of claim of title, believing that he is its owner and has the right to its possession or that he has a right to take it, is not guilty of larceny even though he is mistaken in such belief." (Syl. ¶ 3.)

The issue of the incompatability of an intent to steal with a *bona fide* claim of right was discussed at length by this court in *State v. Pierce, et al.*, 208 Kan. 19, 490 P. 2d 584. There the defendants were convicted of robbery for forcing, by threats, the director of a community services agency to write several checks for wages they claimed were due them. There, as here, the defendants relied primarily upon *Goldsberry*. The court found that reliance misplaced. The language used by the court in *Pierce* is particularly apropos:

"One compelling factual distinction exists between *Goldsberry* and the case at bar. The former involved a claim to certain and specific property, namely, several head of cattle. Here no claim of title to any specific property was invoked by appellants. Rather the purported claim was to *an inchoate undetermined amount of money allegedly owed, to satisfy which appellants took property to which they could trace no claim of title.* Although there is authority to the contrary (see anno. 46 A. L. R. 2d 1227), we believe the better rule, grounded on both law and public policy, is that the violent taking of property from the person of another by force or intimidation for the purpose of applying it to payment of an alleged debt constitutes the offense of robbery where the taker has no bona fide claim of title or right to the possession of *the particular property.*" (p. 26. Emphasis added.)

A number of the earlier authorities indicate that the "prevailing view" among the various jurisdictions of this country is that a claim of right, even to unspecified money, negates criminal intent. Perkins on Criminal Law, p. 229. See also, anno., 46 A. L. R. 2d 1227; 2 Wharton's Criminal Law & Procedure, § 550 (1957); 2 Burdick, Law of Crime, §§ 541, 552, 600. That view does not however, enjoy the universal acceptance those authorities might seem to indicate.

A New Jersey court had a recent opportunity to discuss this so-called "prevailing view" and found its support to be waning:

". . . The most recent annotation in 1956, discloses the proposition to have been adopted or applied in only 11 jurisdictions in the United States . . ., 46 A. L. R. 2d 1227 (1956).

"Moreover, in those jurisdictions which, since 1937, have had occasion to examine the question as a matter of first impression, all have rejected it—with the exception of a single federal case, decided by a divided three-judge court. . . .

"In our view, the proposition not only is lacking in sound reason and logic, but it *is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence.* Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand." (*State v. Ortiz*, 124 N. J. Super. 189, 191-2, 305 A. 2d 800. Emphasis added.)

The same distinction upon which the court relied in *Pierce* is present here. There is no claim of title to any specific property. There is present only a disputed claim to a certain amount of Koehn's money. The taking of money by force or intimidation, even for the purpose of applying it to the payment of an alleged debt, violates public policy and violates our theft statute.

As a subsidiary contention defendant claims that the evidence here tended to show robbery rather than theft, which he says is a separate and distinct crime. This state has long recognized that robbery and theft (formerly termed larceny) are kindred crimes. In *State v. Segermond,* 40 Kan. 107, 108, 19 Pac. 370, the court accepted the definition of robbery as being "larceny committed by violence of the person of one put in fear." In *Guffey v. Casualty Co.,* 109 Kan. 61, 197 Pac. 1098, Syl. ¶ 2, the court held that "Robbery includes larceny and may be deemed forcible larceny, and in order to constitute it there must be an intent to deprive the owner of the property taken, not temporarily but permanently." The principle that the crime of theft is necessarily included in a robbery was recognized by implication in the recent case of *State v. Harris,* 215 Kan. 961, 529 P. 2d 101. There we held that in a robbery prosecution an instruction on theft ("unauthorized control over property as proscribed in K. S. A. 1973 Supp. 21-3701 [a]") was not necessary, but only because the evidence at the trial excluded guilt of the lesser offense.

The evidence in this case, under the *Pierce* rationale, would have justified a finding of the offense of robbery had the defendant been so charged. The evidence being sufficient to support a conviction for the graver offense, it is certainly sufficient to support a conviction for theft.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.