(585 P.2d 1074)
No. 49,592

STATE OF KANSAS, *Appellee,* v. GARY GAMMILL, *Appellant.*

Opin-
ion filed November 3, 1978.

*Richard D. Loffswold, Jr.,* of Girard, for appellant.

*Vernon D. Grassie,* assistant county attorney, *Michael McCurdy,* county attorney, and *Curt T. Schneider,* attorney general, for appellee.

Before FOTH, C.J., SPENCER and MEYER, JJ.

MEYER, J.: The appellant, Gary Gammill (defendant), was taken into custody February 2, 1977, in Galena, Kansas, and subsequently transported to Crawford County and placed in detention in the Children's Court Center in Pittsburg, Kansas. While going through intake procedures at the center, the Crawford County sheriff seized certain pubic hairs from the defendant by plucking them from his body and also took a wristwatch. On February 8, 1977, the defendant was ordered by the district court to be tried as an adult under authority of K.S.A. 38-808. Subsequent thereto, a

complaint and information were filed charging the defendant with violations of K.S.A. 21-3502 and K.S.A. 21-3426, the crimes of rape and robbery, Class C felonies. Defendant was found guilty of both charges.

The defendant contends that the taking of pubic hair by plucking it from his body and the seizure of his wristwatch constituted error. He complains that the items were not seized pursuant to a valid search warrant or incident to a lawful arrest, and that the seizure was unreasonable and in violation of his federal and state constitutional rights.

For a period of six days, as noted above, the defendant was a juvenile and entitled to treatment as such. His parents were not notified at the time he was taken into custody nor were they present when the hair was extracted from defendant. A juvenile is entitled to have his parents present as soon after his detention as possible, and is not to be treated as a criminal defendant. The evidence discloses that some 20-25 hairs were "plucked" or "yanked" from the defendant's body. Not only would a much fewer number have sufficed, the manner of extraction was a needless indignity visited upon the defendant. Thus, collection of the hair samples in the manner employed here, without the consent of defendant's parents, and without his permission, cannot be justified as a seizure "incident to a lawful arrest." Neither can it be claimed that the warrantless seizure was necessary because of exigent circumstances. Pubic hairs may be expected to remain where they are for a considerable period of time—certainly long enough to obtain a valid search warrant or court order. There is no reason, for example, that the sample could not have been taken after the defendant had been certified to be tried as an adult. Furthermore, provisions could have been made for a physician or medical technician to obtain the sample under circumstances which would afford the defendant the dignity to which every person is entitled under his presumption of innocence.

We are cognizant of the case law authorizing the taking of blood samples from a defendant without his consent and without a court order. Warrantless extraction of blood, however, is permitted because the defendant is suspected of having ingested drugs or alcohol. Any incriminating substance present in the defendant's blood at the time of arrest might well dissipate before a court order could be obtained. As we have said above, no such need for haste appears in the instant case.

The following quote from *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966), sets forth the principle with which we are here concerned:

"Whatever the validity of these considerations in general, they have little applicability with respect to searches involving intrusions beyond the body's surface. The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

"Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of petitioner's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test. Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' [Citations omitted.] The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." 384 U.S. at 769-770.

Courts have, of course, upheld seizure of pubic hair samples as evidence; however, in all such cases that we have seen, the hair samples were cut or snipped and not plucked out by the roots. For example, in *Commonwealth v. Tarver,* 369 Mass. 302, 345 N.E.2d 671 (1975), the court says:

"In concluding that the taking of the hair samples was not unreasonable within the meaning of the Fourth Amendment, we consider, in addition to the existence of probable cause, that the taking of the hair samples was not an unreasonable bodily intrusion, if it was a bodily intrusion at all." 345 N.E.2d at 676.

We conclude that plucking out pubic hair, which removes the hair follicle from beneath the surface of the skin, is a bodily intrusion. We do *not* hold that procuring such a sample pursuant to a valid search warrant is improper. No great burden would have been placed on the sheriff either to obtain a search warrant or court order requesting that a doctor extract the sample, or to cut, rather than pluck, the hairs.

The seizure of the wristwatch, on the other hand, we deem to be proper. Anyone taken into custody, whether juvenile detention or temporary imprisonment under charge for a crime, is subject to an

inventory search and recording of the property upon his person. We find no reason, under all the circumstances of this case, why seizure of the wristwatch was improper.

Defendant's next contention is that there is insufficient evidence to support his conviction of robbery under K.S.A. 21-3426. The statute, in pertinent part, reads as follows:

"Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force."

The facts of this case support a reasonable inference that the complaining witness was under a threat of bodily harm to her person. The victim's purse was on a table in the dining room. The dining room was between the bedroom where the victim lay and her only avenue of escape to the outside. There was also evidence that the defendant on several occasions opened the door to the bedroom to threaten the complainant again. However, because the purloined wallet was taken from the dining room table while the complainant was in the bedroom, we would ordinarily feel an instruction on theft should have been given to the jury, were it not for an additional fact. The evidence revealed that after the defendant had stolen the wallet from the victim's purse, he returned, broke in the door, and took the *purse* from the immediate presence of the complaining witness. Whether the wallet was stolen from the victim's presence and whether she was in fear of bodily harm when the *wallet* was taken becomes moot. Under these circumstances, we see no error in refusing to give an instruction on a lesser included offense of theft.

Defendant next alleges that the trial court erred in allowing the court reporter to read back a portion of the testimony of the prosecution's expert witness in the jury room. Neither the defendant nor his attorney was present, as required by K.S.A. 22-3405 and the Sixth and Fourteenth Amendments to the Constitution of the United States.

The jury, after retiring for deliberation, requested that certain testimony be read back to them. The court held an in-chambers conference attended by the court reporter and the attorneys to consider whether the testimony should be read back to the jury. Neither plaintiff's nor defendant's attorney objected. The court thereupon sent the reporter, who entered the jury room alone, to read back the requested testimony. While the trial court has discretion to determine whether testimony should be read back to

the jury, it is clear that such a "read-back" must be done in the courtroom, in the presence of the defendant. The defendant here was not personally present, even at the preceding conference in chambers. It is questionable whether the defendant's attorney can waive such a right (that is, by failing to object) in the absence of the defendant's personal presence; there is no question that he cannot make such a waiver without having at least discussed the matter first with his client. The pertinent rule is set forth in *State v. Andrews,* 218 Kan. 156, 161-162, 542 P.2d 325 (1975):

"It has long been established by this court that if the jury requests the trial court to have the testimony of any witness read to them, it is proper for the court to require the official court reporter to do so in the presence of the parties to the action."

The United States Supreme Court held, in *Illinois v. Allen,* 397 U.S. 337, 25 L.Ed.2d 353, 90 S.Ct. 1057, *reh. denied* 398 U.S. 915, 26 L.Ed.2d 80, 90 S.Ct. 1684 (1970), that the Sixth Amendment guarantees the defendant the right to be present at every stage of his trial in the case.

"The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' We have held that the Fourteenth Amendment makes the guarantees of this cause obligatory upon the States. *Pointer v. Texas,* 380 U.S. 400 (1965). One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial. *Lewis v. United States,* 146 U.S. 370 (1892)." 397 U.S. at 338.

Reading back any testimony to a sequestered jury is a part of the trial, and certainly is encompassed in the phrase "at every stage of his trial."

Defendant also contends that the statements of the prosecutor in closing argument in characterizing the defendant as an "animal," in commenting on testimony properly objected to and excluded by the court, and in commenting on the credibility of witnesses, prejudiced the due process rights of the defendant and denied him a fair trial.

The reference to defendant's being an animal was definitely improper. The court had not yet submitted the case to the jury, and defendant was still entitled to a presumption of innocence. We do not feel, however, that the comment, standing alone, constitutes reversible error.

The following statement, however, also made in the state's closing argument, is error of a significant nature.

"Mr. Loffswold complains that the State is unable to say with any certainty that the hair that belongs to Mr. Gammill and the unknown hair are the same. We tried, as you heard, over lengthy objections, to give you some sort of rule. We could not do so because we did not have the proper books here."

Such a statement strongly implies there was substantial (proper) proof of the defendant's guilt that the trial court would not allow into evidence. The jury is entitled to consider only that evidence which the trial court permits to be introduced. The prosecutor's remark undermined the authority and the credibility of the court and was impermissible.

The state's attorney also made remarks which were tantamount to his endorsing the credibility of certain witnesses. This leaves the jury with the impression that the prosecutor has knowledge other than what was presented to them. Vouching for the credibility of witnesses is reversible error. *State v. Majors,* 182 Kan. 644, 323 P.2d 917 (1958); *United States v. Ludwig,* 508 F.2d 140 (10th Cir. 1974).

The defendant finally argues that the trial court erred in not granting a new trial because of the prosecution's failure to disclose exculpatory evidence to the defendant. This allegation arises from the following: The alleged rape occurred on the night of December 10, 1976; in the early morning hours of December 11, 1976, the prosecutrix was examined by a doctor at the Girard Hospital. The complainant stated that she did not douche prior to the examination. The results of a microscopic examination of the victim's perineal washings and vaginal aspirations indicated that no spermatozoa were present. Defendant claims that the examination results were not disclosed to him at or prior to the trial, and that he first learned of this information two days after the trial. He states that he examined all file material of both the county attorney and the sheriff pursuant to a discovery order, but found nothing pertaining to the complainant's examination. Defendant alleges suppression of this evidence was deliberate and in bad faith; or, if not deliberate, at least the defense could have made advantageous use of the information.

We need not concern ourselves with whether this evidence was withheld deliberately or through inadvertence, because the deputy sheriff undisputedly took the victim to the hospital. The information is imputed to the prosecution, and the fact that it was

not communicated to the defendant, regardless of intent, was improper. The state argues that the evidence was not exculpatory. As we view exculpatory evidence, it need not be evidence so strong that it would absolutely exonerate the defendant, but only strong enough to be of assistance in the defense. The state reasons further that the evidence was not of sufficient materiality to affect the ultimate question of guilt or innocence. To this we might agree, were it the only error appearing in this case. As we have noted above, however, it is not. Following *State v. Kelly,* 216 Kan. 31, 531 P.2d 60 (1975), we would not reverse on this issue standing alone, but consider that it is relevant in arriving at a complete determination herein.

We do not overlook defendant's contention that because a proper chain of custody was not established, the court erred in admitting defendant's wristwatch into evidence; however, we feel that defendant's claim in this regard lacks merit.

Defendant's final allegation of error is that the totality of the circumstances raised in the above issues substantially prejudiced defendant and denied him a fair trial. We agree.

In summation, the view of this court is that the following considerations, when taken collectively, are so great as to require a reversal of defendant's conviction:

(1)   removal of pubic hairs without defendant's consent, without a search warrant when there was ample time to procure one, without defendant's parents being present or afforded an opportunity to be present, and considering defendant's age of 17 years;

(2)   permitting the court reporter to read back particular testimony to the jury, behind closed doors in the jury room, and in the absence of either attorney or the court or the defendant;

(3)   calling the defendant an "animal";

(4)   the prosecutor's closing argument in stating to the jury that the state could have proved certain facts had it not been for the trial court's overruling its objections and refusing to permit the evidence to be received;

(5)   the prosecutor's stating to the jury that he absolutely knew the truth of certain statements, thereby in effect giving weight and credence to certain facts not in evidence.

Under the totality of the circumstances, we find that the de-

fendant did not receive fair treatment and a fair trial, and hold that the case must be reversed and remanded for a new trial.

Reversed and remanded.