(607 P.2d 519)
No. 50,906

STATE OF KANSAS, *Appellee,* v. JAMES E. ANTWINE and MITCHELL McHENRY, *Appellants.*

Opinion filed February 29, 1980.

*Patrick Nichols,* of Topeka, for appellants.

*C. William Ossman,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before PARKS, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This is a direct appeal by the defendants from their conviction of one count of robbery in violation of K.S.A. 21-3426.

The defendants were tried on twelve counts of aggravated robbery and each was convicted on one count of robbing Cecil Weber. From the record before us, it appears that Mitchell McHenry was convicted by virtue of aiding and abetting James E. Antwine. The charges arose out of an incident that occurred at a dice game in Topeka, Kansas. The evidence is highly conflicting, but sufficient evidence was presented to the jury which, if believed, would have supported either conviction or acquittal on all charges of aggravated robbery or the lesser included offense of robbery. The jury obviously disbelieved or rejected a considerable amount of testimony from both sides, and it was not entirely consistent in what evidence it rejected and accepted. Both de-

fendants were sentenced to not less than four nor more than twenty years and are presently incarceratèd. This appeal followed.

Defendants raise seven issues which include failure to instruct on theft and self-defense, errors in admission of evidence, insufficient evidence to support the verdict and alleged violation of defendants' statutory and constitutional rights to be present at every stage of their trial. It is impossible in the limited space available to do justice to the conflicting evidence. Twenty-one witnesses testified, many of whom either were involved in a illegal dice game for money or, if not actually engaged in gambling, were in the room and had the opportunity to participate.

The State's evidence generally was that a dice game was in progress at 804 East 15th Street, Topeka, Kansas. Various witnesses who testified estimated that as few as fifteen to as many as thirty-five persons were in the house the night of the crime. The State's evidence was that defendant Antwine produced a sawed-off shotgun and along with McHenry and two other men proceeded to rob at least fourteen individuals of a considerable amount of cash (over $3,000) as well as jewelry consisting of rings and watches. The alleged victims were forced to strip and lie on the floor. Several of the victims were physically assaulted during the alleged robbery. Not all of the victims could identify the defendants as having been present when the robbery occurred.

Evidence from both sides showed that defendants fled the house and a chase ensued on the Kansas Turnpike. A group of heavily armed (handguns, a fully automatic M1 rifle with a 45-round clip, and a shotgun) alleged victims, several highway patrol troopers, local police and a Topeka Police Department helicopter all were looking for a white Cadillac that was seen leaving the vicinity of the alleged robbery. The white Cadillac was stopped by law enforcement officers and was searched. Over $2,000 in cash and two pistols were recovered. Only two men and a woman were in the white Cadillac, and the officers knew four men were involved. The helicopter observed an eastbound Mercury automobile make a U-turn and drive very slowly west. That vehicle was stopped and the two defendants were found to be the sole occupants. They were arrested and the vehicle was then searched. A holster was recovered but no weapons were found in the car. At trial, defendant Antwine testified he had grabbed the

holster when the fight broke out. For two and a half hours during the following morning, several officers searched the roadside from the point where the Mercury made its U-turn to where the white Cadillac was stopped. They found nothing. Two days later near the same point, officers found a sawed-off shotgun and two weapons within one foot of the roadway. They appeared to have been deliberately placed there. One of the weapons was a derringer of a size similar to that of the holster. The derringer was not identified as having been used at the alleged robbery, and no one claimed ownership of it or the holster.

The two defendants testified in their own behalf. Their version was that they, two other men and one woman came to Topeka in two cars. Their express purpose in coming was to use "loaded" dice to cheat in a dice game. Defendant Mitchell McHenry was acquainted with at least one of the victims, and both the victim and McHenry testified each recognized the other and they spoke before McHenry entered the dice game. At trial McHenry produced dice of various sizes, shapes and colors. He testified that he observed the dice in use at the gaming table, then went into the restroom and took a similar pair from his dice pouch; his dice would roll only even numbers, thus making it impossible for him to lose. The "loaded" dice were in McHenry's possession when he was arrested. Cecil Weber is the victim who defendants were convicted of robbing, and McHenry identified Weber as the houseman who ran the game and cut the pot. McHenry testified he won a lot of money and that he borrowed a yellow handbag from Weber to put the cash in. He also testified that from time to time he accepted jewelry on pawn from the game's participants and put that in the bag. He stated it was his practice while cheating to stand beside a woman or someone who appeared to him to be an inexperienced dice player, but that he became careless and the woman next to him picked up the "loaded" dice and accused him of cheating. According to McHenry, Weber then pulled a gun and threatened to kill him. The defendant Antwine allegedly hit Weber in the head and another member of the group picked up Weber's gun. Antwine then grabbed their money along with other money that was lying on the gaming table and fled. A witness whom defendants had met in jail testified in their behalf that he was present when the incident occurred at the dice game and verified in part the defendants' version of what occurred.

It is our opinion that several complaints made by defendants are valid, and that because of the errors defendants are entitled to a new trial on the robbery charge.

I. Admission of Guns Into Evidence.

Defendants objected at trial to the admission into evidence of a sawed-off shotgun, a derringer and another pistol that were found along the turnpike near the point where their car had been stopped the night of the alleged robbery. Their main objection was that the guns turned up near the roadway laid out in an orderly fashion two days after the incident, although a search had been made of the area the morning after the incident.

The standards for identification and admission of physical evidence are discussed in *State v. Robinson*, 203 Kan. 304, 311-12, 454 P.2d 527 (1969):

"The admissibility in evidence of a physical object is to be determined by the trial judge on the basis of its relevance and connection with the accused and with the crime charged. In order to justify its admission its identity must be shown to the satisfaction of the trial judge.

"In 2 Wharton's Criminal Evidence (11th Ed.) § 762 at page 1293 it is said:

" '. . . However, the prevailing view is that it is not necessary that such identification should positively and indisputably describe and relate to such evidence. If a question of fact as to the connection of the articles sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility. . . .'

"We see no lack of positive identification in the present case.

"Physical objects connected with the proscribed criminal act, or which serve to unfold or explain it, are generally exhibited in evidence whenever the criminal act is under investigation. (*State v. Joseph Little*, 201 Kan. 101, 439 P.2d 383; *State v. Jerrell*, 200 Kan. 415, 436 P.2d 973.)

"Although admissibility in the first instance rests in the judicial discretion of the trial judge, if the circumstances surrounding possession of an article are sufficient to infer relevance to the offense charged an issue of fact is presented. The final decision is left for the jury to determine whether the accused owned or possessed the articles. (2 Wharton's Criminal Evidence [11th Ed.] § 765, p. 1290, 1292.)"

Evidence is relevant if it has any tendency in reason to prove a material fact. *State v. Nemechek*, 223 Kan. 766, 576 P.2d 682 (1978). Subject to certain exceptions not present in this case, the admission of evidence lies within the sound discretion of the trial court. *State v. Jakeway*, 221 Kan. 142, 558 P.2d 113 (1976). One who claims abuse of discretion on the part of the trial court has

the burden of proving that contention, and when reasonable persons could differ as to the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *McColm v. Stegman,* 3 Kan. App. 2d 416, Syl. ¶ 2, 596 P.2d 167 (1979).

The weapons were discovered at a place near where defendants' car had been. The sawed-off shotgun was identified as having been wielded by defendant Antwine during the commission of the robbery. The derringer pistol fit the holster recovered from the glove compartment of defendants' car. In our opinion, the trial judge properly admitted the weapons into evidence. In any event, it is difficult to see how the defendants were prejudiced in view of the jury verdict having found them not guilty on all counts of aggravated robbery (robbery committed by a person who is armed with a dangerous weapon) and guilty on only a single count of robbery (robbery committed by force).

II. Were the Charges Multiplicitous?

Defendants contend there was only one robbery committed despite the existence of numerous alleged victims. The improper charges, they argue, denied them a fair trial by providing so many charges that a compromise verdict easily could have occurred. As the sole support for their position, defendants direct this Court's attention to *State v. McQueen & Hardyway,* 224 Kan. 420, 582 P.2d 251 (1978). Defendants did not raise the issue of multiplicity at trial, and subject to well-defined exceptions a defendant may not present matters or issues on appeal that were not raised before the trial court. *Safeway Stores, Inc. v. Workers' Compensation Fund,* 3 Kan. App. 2d 283, Syl. ¶ 1, 593 P.2d 1009 (1979). As a result, this Court need not determine the issue on appeal. In any event, *McQueen & Hardyway* is distinguishable from the case before us. See *State v. Stoops,* 4 Kan. App. 2d 130, 139, 603 P.2d 221 (1979). The trial court did not err in allowing the State to prosecute defendants for multiple charges of robbery.

III. Evidence Returned To Alleged Victims.

Prior to trial, apparently without court approval, money and jewelry seized from defendants were turned over to the alleged victims by the Topeka Police Department. Testimony concerning that fact was presented to the jury. Defendants did not object to the introduction of that evidence at trial; they did not move that it be stricken nor did they request a cautionary instruction. De-

fendants contend the admission of evidence that the money and jewelry had been returned to the victims prior to defendants' trial prejudiced them by giving to the jury an impression that the property had indeed been stolen, contrary to defendants' contention that the money and jewelry had been won by them in the dice game. They argue that in any event a cautionary instruction should have been given to the jury, but they cite no legal authority to support their position.

It is not difficult to envision a situation when it would be highly prejudicial to permit testimony before a jury that the court or law enforcement authorities had returned money or property to an alleged victim despite a claim by the accused that the money or property belonged to the accused. When ownership of property is in dispute, the trier of facts should determine the question without injecting the possibility of prejudice by admitting evidence of law enforcement officers' implied opinion of ownership.

The evidence in this case could have been highly prejudicial, but neither defense counsel objected to its introduction. A verdict or finding will not be set aside, nor will the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless it appears of record that an objection to the evidence was timely interposed and stated so as to make clear the specific ground of the objection. *Schlatter v. Ibarra,* 218 Kan. 67, 71, 542 P.2d 710 (1975); K.S.A. 60-404. Likewise, it was not error for the court to fail to give a cautionary instruction to the jury when no such instruction was requested by counsel. K.S.A. 22-3414(3). Furthermore, it is difficult to perceive just how defendants here were prejudiced given the fact that they were acquitted by the jury on all counts of robbery but one and the property was returned to each of the alleged victims.

IV. Sufficiency of Evidence.

Defendants argue there is no evidence that property was taken from Cecil Weber; and further, that the verdict is inconsistent because the evidence presented at trial supported only aggravated robbery, not simple robbery. They reason that if the jury had believed Weber and the State's other witnesses, they would have been found guilty of aggravated robbery and according to their version they were not guilty of either robbery or aggravated robbery.

Our scope of review is limited to determining whether the

evidence when viewed in the light most favorable to the State convinces this Court that a rational factfinder could have found the defendants guilty beyond a reasonable doubt. An appellate court looks only to the evidence in favor of the verdict, it does not weigh the evidence; and if the essential elements of the charge are sustained by any competent evidence, the conviction stands. *State v. Smolin,* 221 Kan. 149, Syl. ¶ 6, 557 P.2d 1241 (1976). Moreover, an inconsistent verdict is not erroneous when substantial competent evidence exists to support it. *State v. Shultz,* 225 Kan. 135, 141, 587 P.2d 901 (1978). Substantial competent evidence exists in the form of multiple eyewitnesses who identified defendants as the persons who took the proceeds of a dice game at gunpoint. The money and jewelry were found in the possession of three others who defendants admitted were members of their group. While the verdict may be somewhat inconsistent, substantial competent evidence exists to support it and we find no error. Our Supreme Court has recognized that a jury may sometimes reach its verdict partially out of clemency for the accused. *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976); *State v. Brundige,* 114 Kan. 849, 220 Pac. 1039 (1923).

V. Failure to Instruct on Theft and Defense of Oneself Or Another.

Defendants contend they were entitled to instructions presenting their theory of defense and that the trial court erred in failing to instruct on theft and a person's justification in the use of force to defend oneself or another person. Counsel for both defendants approved the instructions given by the court in this case, and neither counsel requested of or suggested to the trial judge that an instruction be given to the jury on either theory. An instruction was given to the jury concerning a person's justification in threatening to use force and in using force to stop an unlawful interference with property lawfully in a person's possession (PIK Crim. 54.19). An accused is entitled to instructions on his theory of defense if that theory is supported by any evidence whatsoever (*State v. Christon,* 3 Kan. App. 2d 372, 375, 595 P.2d 356 [1979]), and it does not matter that the only evidence adduced is the unsupported testimony of the defendant. *State v. Sullivan & Sullivan,* 224 Kan. 110, 120, 578 P.2d 1108 (1978). The law is also well established that the trial court has a duty to instruct on lesser

included offenses even though such instructions have not been requested. *State v. Sullivan & Sullivan* at 120; K.S.A. 21-3107(3). If an accused fails to give the grounds for an objection, or fails to request an instruction on something other than a lesser included offense, then the accused may not claim error unless the court's action is clearly erroneous. *State v. Worth,* 217 Kan. 393, 395, 537 P.2d 191 (1975), *cert. denied* 423 U.S. 1057 (1976). It is equally well established that the court's duty to instruct on the defendants' theory goes only as far as that theory is supported by competent evidence and is germane to the issues raised by the pending charge. *State v. Runnels,* 203 Kan. 513, 516, 456 P.2d 16 (1969).

Our Kansas Supreme Court has said that in order for an offense to be considered a lesser included offense under K.S.A. 21-3107(2)(*d*), all elements necessary to prove the lesser offense must be present to establish the elements of the greater offense, and if the lesser offense requires proof of an element not necessary in the greater, it is not a lesser included offense and the court should not so instruct. The Supreme Court has applied a very narrow definition of what constitutes a lesser included offense. Battery is not a lesser included offense of attempted rape because battery requires touching the person of another in a rude manner, while attempted rape does not. *State v. Arnold,* 223 Kan. 715, 576 P.2d 651 (1978). Aggravated battery is not a lesser included offense of attempted murder, because aggravated battery requires unlawful touching or application of force to the person of another, while attempted murder does not. *State v. Daniels,* 223 Kan. 266, 573 P.2d 607 (1977). Aggravated assault is not a lesser included offense of aggravated battery, because aggravated assault requires an immediate apprehension of bodily harm, while aggravated battery does not. *State v. Bailey,* 223 Kan. 178, 573 P.2d 590 (1977). Carrying a concealed firearm and an aggravated weapons violation are not lesser included offenses of the unlawful possession of a firearm, because carrying a concealed weapon requires that the defendant knowingly possess a firearm that has a barrel less than twelve inches long, while an aggravated weapons violation requires that the defendant knowingly carry a firearm concealed on his or her person; the unlawful possession of a firearm requires proof of neither of these elements. *State v. Hoskins,* 222 Kan. 436, 565 P.2d 608 (1977). Conspiracy to

commit burglary is not a lesser included offense of burglary, because conspiracy to commit burglary requires an agreement between two or more persons, while burglary does not. *State v. Burnett,* 221 Kan. 40, 558 P.2d 1087 (1976).

In considering whether the trial court erred in failing to give an instruction on theft, we are mindful of the holding in *State v. Thompson,* 221 Kan. 165, 558 P.2d 1079 (1976), to the effect that the statutory crime of robbery is the taking of any property from a person or the presence of another by threat of bodily harm or by force, and the requirement of a specific intent to deprive the owner permanently of his property was eliminated with the enactment of our present statute, K.S.A. 21-3426. The statutory crime of theft (K.S.A. 21-3701) is a crime against property as opposed to a crime against persons, and it requires proof of "intent to deprive the owner permanently of the possession, use or benefit of his property." Although *Thompson* suggests that robbery and theft contain distinct elements, we believe our Supreme Court has determined that theft is a lesser included offense of robbery and we are duty bound to follow that determination. In *State v. Russell,* 217 Kan. 481, 484, 536 P.2d 1392 (1975), the Court said:

"As a subsidiary contention defendant claims that the evidence here tended to show robbery rather than theft, which he says is a separate and distinct crime. This state has long recognized that robbery and theft (formerly termed larceny) are kindred crimes. In *State v. Segermond,* 40 Kan. 107, 108, 19 Pac. 370, the court accepted the definition of robbery as being 'larceny committed by violence of the person of one put in fear.' In *Guffey v. Casualty Co.,* 109 Kan. 61, 197 Pac. 1098, Syl. ¶ 2, the court held that 'Robbery includes larceny and may be deemed forcible larceny, and in order to constitute it there must be an intent to deprive the owner of the property taken, not temporarily but permanently.' The principle that the crime of theft is necessarily included in a robbery was recognized by implication in the recent case of *State v. Harris,* 215 Kan. 961, 529 P.2d 101. There we held that in a robbery prosecution an instruction on theft ('unauthorized control over property as proscribed in K.S.A. 1973 Supp. 21-3701[a]') was not necessary, but only because the evidence at the trial excluded guilt of the lesser offense."

The Supreme Court has subsequently approved the *Russell* holding in *State v. Colbert,* 221 Kan. 203, 557 P.2d 1235 (1976); *State v. Aldershof,* 220 Kan. 798, 556 P.2d 371 (1976); and *Morrow v. State,* 219 Kan. 442, 444-45, 548 P.2d 727 (1976). Of particular significance to us is that *Colbert* was filed by the Supreme Court on the same day as *State v. Thompson,* 221 Kan.

165, indicating that the Supreme Court apparently did not intend to depart from its previous line of cases holding theft to be a lesser included offense of robbery by reason of eliminating the requirement in robbery of a specific intent to deprive the owner permanently of his or her property.

The credibility of the witnesses is for the jury to determine and according to the defendants' testimony and the testimony of Tyra L. Arnold, defendants' jail acquaintance and another alleged participant in the game, the pair was discovered cheating and the houseman, Cecil Weber, pulled a gun on them. In fear for his safety, defendant Antwine claims that he struck Weber and in the process contributed to disarming him. In the ensuing melee, Antwine claims that he grabbed some money off the table just as everyone else was doing and ran. Defendant McHenry testified that he never took any money off the table, he just ran out of the house in fear. (McHenry is directly affected by any error in Antwine's instructions, however, since he was apparently convicted for aiding and abetting Antwine.) Under defendants' theory, no force was used in taking the money from the table but, instead, the money was stolen from the presence of its owners amidst the confusion of the fighting. If the jury believed defendants' evidence, sufficient evidence existed to support a conviction for theft, and in our opinion the trial court's failure to give an instruction on theft pursuant to K.S.A. 1979 Supp. 21-3701(*a*) constitutes reversible error. *State v. Sullivan & Sullivan,* 224 Kan. at 122; *State v. Satterfield,* 3 Kan. App. 2d 212, 221, 592 P.2d 135, *rev. denied* 226 Kan. 793 (1979).

The claim of error by virtue of the trial court's failure to give an instruction on a person's justification in the use of force to defend oneself or another person presents an entirely different problem. The failure to give such an instruction cannot be assigned as error unless clearly erroneous by reason of defendants' failure to request such an instruction. K.S.A. 22-3414(3). There is evidence in the record to support such an instruction based on defendants' testimony that Cecil Weber pulled a gun and was threatening to kill McHenry for cheating. Although K.S.A. 21-3214 does not permit the use of self-defense for an aggressor who is engaged in the commission of a forcible felony, if defendants' evidence was accepted by the jury (and it is obvious that a considerable amount of it was accepted) then defendants were not engaged in a forcible

felony and K.S.A. 21-3214 would not bar such a defense despite the State's evidence that defendants were engaged in the commission of aggravated robbery. An instruction was given concerning defense of property which would have allowed the jury to consider the use of reasonable force to protect property (including money) lawfully in defendants' possession. The jury rejected the State's evidence that the defendants used guns and thus it appears the jury believed the defendants used force in obtaining property from Weber. Just what property is unknown. Was it the pistol taken from Weber? Was it the money Antwine admitted taking from the table after striking Weber? After retiring to deliberate, the jury did ask if taking money by use of crooked dice could be construed as intentionally taking money or robbery. Thus, it is impossible to tell from the record what the jury determined was taken from Weber. Generally, self-defense does not justify the taking of money or property from an aggressor, and the lawfulness of the force used to accomplish the theft is immaterial. *People v. Beebe,* 38 Colo. App. 80, 557 P.2d 840 (1976). The taking and retention of a gun until it is safe to return it, however, is permissible where self-defense is justified. *State v. Campbell,* 214 N.W.2d 195 (Iowa 1974). Based on the record before us, we cannot say the failure to give an instruction on a person's justification in the use of force to defend oneself or another person was clearly erroneous; however, if such an instruction is requested on retrial, the trial court may want to consider giving an instruction appropriately modified from that found in PIK Crim. 54.17 in view of this opinion, *State v. Aldershof,* 220 Kan. 798, and K.S.A. 21-3214.

VI. Right of Defendants to be Present.

Defendants complain that the court and counsel held a conference in chambers without defendants concerning the admissibility of the weapons found alongside the Kansas Turnpike. This issue was not raised in the trial court and will not be considered for the first time on appeal. *Safeway Stores, Inc. v. Workers' Compensation Fund,* 3 Kan. App. 2d 283, Syl. ¶ 1. If we were to consider defendants' argument, it is without merit. In *State v. Mantz,* 222 Kan. 453, 463-464, 565 P.2d 612 (1977), the Supreme Court determined that defendant's presence at in chambers conferences is not constitutionally required since the right to be present applies only to proceedings when presence is essential to

a fair and just determination of a substantial issue and does not extend to proceedings involving only questions of law. The term "question of law" includes arguments concerning the admissibility of evidence. See Annot., 85 A.L.R.2d 1111, 1112.

The trial judge did err, however, when in the absence of the defendants, but with the permission of counsel for both defendants, he permitted the court reporter to enter the jury room and read to the jury the entire recorded testimony of Odell Scott. The trial judge also erred under the facts of this case when, again with permission of counsel for both defendants, he communicated with the jury concerning application of the instructions and allowed a review of some evidence presented at trial. In view of our disposition of this appeal, we need not consider whether the error was harmless or prejudicial.

An accused has a constitutional right (K.S.A. 22-3405[1]) to be present at every stage of his or her trial, and K.S.A. 22-3420(3) provides that if a jury requests information regarding any part of the law or the evidence submitted in the case, the requested information must be given in open court *in the presence of the accused* unless the accused is voluntarily absent.

We previously held in *State v. Gammill,* 2 Kan. App. 2d 627, 585 P.2d 1074 (1978) that a read-back of testimony must be done in the courtroom in the presence of the defendant. *Gammill* held that an attorney cannot waive the right of an accused to be present during the read-back without first having discussed the matter with the accused. The Supreme Court of Kansas has since held that an attorney may waive a client's right to be present at trial *when based on the record* at trial it is shown that the defendant voluntarily waived the right to be present. *State v. Sandstrom,* 225 Kan. 717, 721, 595 P.2d 324, *cert. denied* November 5, 1979. The record in this case is silent as to any attorney-client consultation, and such a conference and waiver will not be presumed from a silent record. For additional authority, see *Cross v. United States,* 325 F.2d 629, 631-33 (D.C. Cir. 1963), and *Miles v. State,* 222 Ind. 312, 53 N.E.2d 779 (1944).

A trial judge's communication with the jury concerning application of the instructions and a review of some of the evidence presented at trial was held to be error in *State v. Dunnan,* 223 Kan. 428, 431-32, 573 P.2d 1068 (1978). Again, the record is silent that the defendants waived their right to be present or that their

attorney waived that right after consultation with them. While we need not consider whether the court's action here was prejudicial error, it would seem a jury could not help but speculate that an accused who is absent from such stages of the proceedings must be in jail, possibly because the court considered the accused to be too dangerous to remain in the building.

Reversed with directions to grant a new trial.