(916 P.2d 61)

No. 73,421

STATE OF KANSAS, *Appellee*, v. SCOTT A. ACREE, *Appellant*.

Opinion filed May 17, 1996.

*Stephen C. Moss*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Ty Kaufman,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before BRAZIL, C.J., KNUDSON, J., and C. FRED LORENTZ, District Judge, assigned.

KNUDSON, J.: The defendant, Scott A. Acree, appeals his conviction for burglary and misdemeanor theft following jury trial. He contends the district court erred in directing a readback of testimony to occur in the jury room outside the presence of court, counsel, and the defendant. Additionally, Acree contends that the district court erred in its supplemental instruction defining reasonable doubt and in admitting prior crimes evidence under K.S.A. 60-455.

Under the particular facts of this case, we conclude that the district court committed harmless error in the readback; the court's supplemental instruction, which attempted to define reasonable doubt, was harmless error; and the court did not err in its admission of prior crimes evidence.

When Scott DeWitt arrived home on the evening of May 5, 1994, at approximately 9 p.m., he discovered a burglary of his tack shed with several items missing. Acree was a suspect. Police officer Mark Mathies located Acree's vehicle about 1 hour later that evening at the residence of Daryl Isaacson and discovered inside Acree's vehicle items which matched the description of items reported missing by DeWitt.

Officer Mathies returned to Isaacson's residence on June 8, 1994, and found additional missing items.

Acree was charged with burglary of a building not a residence and felony theft. Prior to trial, when interviewed by William Blair of the McPherson County Sheriff's office, Acree denied being at DeWitt's property and taking any of his personal items. He told Blair that he had found the items at the city dump.

Ten-year-old Richard Anderson lived with his family across the street from the DeWitt property. Richard testified to seeing Acree in his orange and white International Scout vehicle at DeWitt's shortly before the alleged crimes and related that DeWitt left about 10 to 15 minutes later. Richard did not see what DeWitt did at the

property. Richard also testified to the condition of the property and his observations that on two prior occasions the door to the tack shed was either padlocked or shut. On cross-examination, Richard noted he had seen another vehicle, which he could not identify, drive onto the DeWitt property about 1 hour earlier than when he had seen Acree. We note neither counsel asked Richard if he knew how long the other vehicle remained at the property.

In his testimony, Acree denied telling Deputy Blair he had found the items located in his Scout at the city dump. Acree testified that he did not enter the tack shed. He believed the property was abandoned and took a few items of personal property strewn about the yard.

### The Anderson Readback

During jury deliberations, the jury asked to have Richard Anderson's testimony read back. The written request by the jury did not suggest why the readback was needed by the jury. The district court met with Acree and the attorneys in chambers, where an on-the-record discussion took place. The district court said:

"I propose we simply send [the court reporter] in to the jury room to read back the testimony less those questions objected to that I sustained, and not bring the jury back in the courtroom. Just saves us having to sit through it. Any objection to proceeding in that manner?"

Both attorneys acknowledged on the record that they had no objection. From the record, we can neither discern if the district court directed his question to Acree nor ascertain if Acree's attorney conferred with him before answering the judge. It is clear that Acree did not verbally respond to the judge's proposal, and there is no indication that Acree nodded or otherwise affirmatively acquiesced to the readback in the jury room.

On appeal, Acree argues that the trial court erred by allowing the court reporter to enter the jury room and read back a portion of the evidence outside the courtroom and his presence. This issue involves a question of law. The scope of appellate review when considering a question of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

An accused has a constitutional and statutory right to be present at every stage of his or her trial. See K.S.A. 22-3405(1); *Illinois v. Allen*, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057, *reh. denied* 398 U.S. 915 (1970) (Sixth Amendment guarantees the defendant's right to be present at every stage of his or her trial). Reading back testimony to a jury is a part of the trial, and "certainly is encompassed in the phrase 'at every stage of his trial.' " *State v. Gammill*, 2 Kan. App. 2d 627, 631, 585 P.2d 1074 (1978).

K.S.A. 22-3420(3) provides that if a jury requests information regarding any part of the law or the evidence submitted in the case, the requested information must be given in open court in the presence of the accused unless the accused is voluntarily absent. *State v. Antwine*, 4 Kan. App. 2d 389, 401, 607 P.2d 519 (1980).

This court held in *State v. Gammill*, 2 Kan. App. 2d at 630-31, that a readback of testimony must be done in the courtroom in the presence of the defendant. See *State v. Knapp*, 234 Kan. 170, 671 P.2d 520 (1983); *State v. Dunnan*, 223 Kan. 428, 432, 573 P.2d 1068 (1978); *Antwine*, 4 Kan. App. 2d at 389. In *State v. Sandstrom*, 225 Kan. 717, 721, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979), the Kansas Supreme Court held that an attorney may waive a client's right to be present at trial when, based on the record, it is shown that the defendant voluntarily waived the right to be present. In addition, *Gammill* held that an attorney cannot waive the right of an accused to be present during the readback without first having discussed the matter with the defendant. 2 Kan. App. 2d at 631. This court in *Antwine* held that a waiver will not be presumed from a silent record. 4 Kan. App. 2d at 401.

In *Knapp, Antwine, Dunnan,* and *Gammill,* the defendants were not present when the decision to have the readback performed in the jury room was made, although the defendants' attorneys were present. The court held in each case that performing the readback in the jury room outside the presence of the defendant was error. In the case at hand, the State argues that the court did not err because Acree was present when the trial court asked for objections.

As in the cases noted above, however, the record is silent as to any attorney-client consultation. Although Acree was present when

the decision was made, there is nothing in the record to show that he knew that he had a right to be present when the readback occurred. Absent a consultation between Acree and his counsel apparent on the record, a knowing waiver should not be presumed. *Antwine*, 4 Kan. App. 2d at 401. The trial court erred in allowing the court reporter to enter the jury room and read back a portion of the evidence outside the courtroom and the presence of the defendant.

We must next decide whether this constitutional error was harmless.

"An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial." *State v. Johnson-Howell*, 255 Kan. 928, 944-45, 881 P.2d 1288 (1994).

" 'On appeal, the defendant has the burden of showing the error substantially prejudiced his or her rights.' " *State v. Bowser*, 252 Kan. 582, 589, 847 P.2d 1231 (1993), quoting *Crease v. State*, 252 Kan. 326, 334, 845 P.2d 27 (1993).

Acree argues that the trial court's error was prejudicial because he was denied the ability to ensure that the readback was properly performed without undue inflection; that the entire testimony was read back including cross-, redirect, and recross-examinations; that the objections sustained by the trial court were not read to the jury; and that the readback was not interrupted by the question of a juror. Before considering these specific matters raised by Acree, it would be helpful to place Anderson's substantive testimony in context with the factual issues presented to the jury for resolution.

Anderson was one of seven witnesses called by the State to testify. During his testimony, two objections by the defense were lodged during direct examination. Both objections were sustained. Acree objected when Anderson was asked whether DeWitt was concerned about any of his buildings. He answered, "Sure." The second objection was to the county attorney's question as to whether the tack shed was usually locked. The witness did not give an answer prior to the court sustaining the objection.

Acree never disputed that he had entered upon DeWitt's property. His defense to the charge of burglary was that he did not enter the tack shed. Anderson's testimony did not contradict or otherwise discredit this defense. As to the theft count, Acree's defense of abandonment was not compromised by any of Anderson's testimony. Anderson testified that he never saw what Acree did after entering the driveway of DeWitt's property.

The case against Acree was substantially circumstantial. Many of the missing items were found in his vehicle shortly after he had been at DeWitt's property. It was DeWitt, not Anderson, who testified that those items had been taken from the tack shed. It was both Acree and DeWitt who testified to items taken or missing from the property, not Anderson.

Finally, we would note that Anderson gave testimony that could only help Acree when he narrated seeing another vehicle enter the DeWitt property earlier in the evening.

Constitutional error must never be taken lightly. Nonetheless, if the error did not adversely affect Acree's right to a fair trial, it would make no sense to set aside the verdicts and require another trial. Substantively, Anderson's testimony neither established a controverted issue nor did harm to Acree's defenses to both charges.

As to the manner and method of the readback, while we do not condone the practice, only wild speculation would permit us to conclude any prejudice occurred. One of the two objections sustained by the court during Anderson's testimony had drawn no response from the witness; the other was to a question that could not possibly have influenced the jury in deliberations. More importantly, the record is devoid of any post-trial evidence that the court reporter did not properly read back the testimony or that there was any impropriety during the readback. Thus, Acree has failed to provide an adequate record on appeal to substantiate his claim of prejudicial error. See *State v. Richardson*, 256 Kan. 69, 84, 883 P.2d 1107 (1994). We hold that the error was harmless beyond a reasonable doubt.

### Reasonable Doubt Instruction

On appeal, Acree argues that the trial court erred in the manner

in which it defined reasonable doubt. The trial court instructed the jury as·follows:

"Reasonable doubt does not mean a mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. Reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the mind of a juror in that condition that he/she cannot say that he/she feels an abiding conviction for a moral certainty to the truth of the charge."

Although Acree does not spell out his theory of error, it appears that he is claiming that the trial court deprived him of his due process rights by lowering the standard by which the jury found him guilty because the jury became confused by the instruction.

Efforts to define reasonable doubt, other than as provided in PIK Crim. 3d 52.02, usually lead to a hopeless thicket of redundant phrases and legalese, which tends to obfuscate rather than assist the jury in the discharge of its duty. We have no hesitancy in strongly counseling the trial bench to use PIK Crim. 3d 52.02 and resist requests for a more expansive definition.

In *Victor v. Nebraska*, 511 U.S. 1, 127 L. Ed. 2d 583, 590, 114 S. Ct. 1239 (1994), the United States Supreme Court stated: "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor* held that a definition of reasonable doubt almost identical to the definition in this case did not violate due process. The Court reasoned that other words and phrases in the definition itself helped to define the troublesome phrases of "moral evidence" and "moral certainty," 511 U.S. at 10-17. The court specifically stated, however, that it did not condone the use of the words "moral evidence" and "moral certainty." 511 U.S. at 16.

The Kansas appellate courts have held that the standard of review when an instruction is challenged to determine (1) whether the instructions, considered as a whole, properly and fairly state the law as applied to the facts in the case and (2) whether the jury might reasonably be misled by the instruction. *State v. DeVries*, 13 Kan. App. 2d 609, 611, 780 P.2d 1118 (1989). Although *Victor* did

not state the standard of review in the same words, it did hold that the instruction did not invite the jury to convict the defendant on proof below that required by the Due Process Clause. 511 U.S. at 16. In other words, the instruction explained to the jury what the law was. In addition, the court held that "there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." 511 U.S. at 16. In other words, the jury was not misled by the instruction.

Based on the holding in *Victor* and the standard of review in *DeVries*, we hold that the trial court's definition of reasonable doubt did not violate Acree's due process rights or otherwise create prejudicial error.

### *K.S.A. 60-455 Evidence*

Acree argues that the trial court erred by allowing the State to present evidence of a 1978 conviction for burglary and theft. Prior to trial, Acree filed a motion in limine, requesting that the State be prohibited from introducing any evidence of Acree's previous convictions. The State requested and received a K.S.A. 60-455 hearing prior to the start of the trial. Acree's counsel argued that the previous convictions were highly prejudicial, that their prejudicial nature outweighed their probative value, and that they were irrelevant and remote in time. He further argued that there was no information about the similarity of the crimes and that the jury would believe that if Acree committed the previous crimes, he must have committed these crimes.

The trial court ruled that the prior conviction was relevant to the issue of intent, knowledge, and absence of mistake, stating that "where a set of facts is subject to two different interpretations, one criminal and one legal, then the prior conviction becomes highly relevant on the issue of intent." Noting that the issue of Acree's intent was highly contested, the court then balanced the probative value and the prejudicial effect and ruled that the probative value outweighed the prejudicial effect.

At the conclusion of the State's case, the trial court presented the jury with a signed statement, stipulating that Acree was con-

victed in 1978 of burglary and theft. The court then gave the jury the following limiting instruction: "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crimes charged. This evidence may be considered by you solely for the purposes of proving the defendant's intent, knowledge, and absence of mistake or accident."

Our standard of review is whether the trial court abused its discretion in admitting the prior crimes evidence under the limiting instruction given. *State v. Clements,* 252 Kan. 86, 88-89, 843 P.2d 679 (1992).

Acree argues on appeal that the trial court erred in admitting the prior crimes evidence because intent was not an issue. This argument was not raised before the trial court and accordingly will not be considered on appeal. *State v. Solomon,* 257 Kan. 212, 222, 891 P.2d 407 (1995).

Even if we were to consider this issue, Acree's contention is without merit. Whether he had an intent to commit theft was a critical issue under *both* counts of the information. Acree's argument that the crucial dispute at trial was whether the property was in the tack shed, not his intent, ignores the theft count.

We finally note that Acree does not raise on appeal the concerns expressed before the trial court that the evidence was too remote to have probative value and that, in any event, its prejudicial effect outweighed its probative value. "An issue neither briefed nor argued on appeal is deemed to have been abandoned." *State v. Pratt,* 255 Kan. 767, Syl. ¶ 4, 876 P.2d 1390 (1994).

Affirmed.