(892 P.2d 918)
No. 71,205

STATE OF KANSAS, *Appellee*, v. JEREMY LEE RHOADS,
*Appellant*.

Opinion filed April 7, 1995.

*Tyler Garretson*, legal intern, *Max Rowinsky*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Michelle V. Hostetler*, assistant district attorney, *Joan Hamilton*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRISCOE, C.J., ELLIOTT, J., and STEPHEN D. HILL, District Judge, assigned.

HILL, J.: Jeremy L. Rhoads appeals his convictions and sentence for burglary of a motor vehicle, criminal damage to property, and theft.

While on routine patrol, Topeka Police Officer Lance Feyh entered the parking lot behind the Cedar Ridge apartment complex shortly after midnight on May 29, 1993. Feyh noticed a figure of a man crouched down next to a vehicle parked in the lot. The man started walking away from the parked car as the officer approached. Officer Feyh became suspicious when a bystander told him the man was running away.

Feyh, first on foot and then in his patrol car, tried to keep the running man in sight. The man ran across a nearby unpaved parking lot next to a church. The officer described the suspect as approximately 5'9" to 5'11" tall, with long blond hair, and wearing overall-type cutoff shorts with the straps hanging down off his shoulders and a white T-shirt. Feyh believed the man was carrying something. When the man ran around the corner of the church, Feyh lost sight of him and called for assistance. Officer Feyh returned to the car parked in the lot, a 1982 Camaro, and noticed that the passenger window had been broken.

Further investigation revealed that the car belonged to Richard Frederick, a resident of the complex. Frederick reported that a floor tom drum, a snare drum, a compact disc player installed in the car, and a compact disc and case had been taken from the car.

Officer William White and "canine officer" Dukes responded to Officer Feyh's call for assistance. Dukes is a police dog trained to trail a suspect by scent and discover both the suspect and any items dropped by the suspect along the trail. After consulting briefly with Officer Feyh, Officer White set Dukes onto the trail beginning at the Camaro in the parking lot. White gave the command to find the trail and Dukes led White across the unpaved

parking lot and alongside the church. This was approximately the same path taken by the man Feyh saw running away.

While Dukes and Officer White were following the trail, Officer Feyh noticed a man at a distance who "briefly fit the description" of the man who had run away. Feyh drove to the man to talk with him. The man was approximately 5' 10" tall with long blond hair, and he was wearing overall-type cutoff shorts. The overall straps were on his shoulders, and he was not wearing a shirt. Feyh felt certain that this was the man who had run from him earlier. The man identified himself as Jeremy Rhoads. He did not attempt to flee from Officer Feyh, and he answered all of the policeman's questions.

Meanwhile back on the trail, Officer White heard on his police radio that Feyh was questioning someone about the case. White continued on the trail with Dukes to see if the trail led to the man with Officer Feyh. Dukes continued on the trail to within about 30 yards of Rhoads and Officer Feyh and then stopped and looked up. To White, this meant that Dukes had found his suspect. While Feyh and Rhoads were still talking, Dukes and White returned to the unpaved parking lot to search for evidence. Officer White found a compact disc case that Frederick later identified as one taken from his car. No other items taken in the burglary were found.

Officer Feyh discovered fresh shoe prints in the sand next to the passenger side of the Camaro. Feyh testified that the footprints did not match any of the police officers' shoes. Feyh testified that Rhoads' Converse React tennis shoes, which he had seized as evidence, matched the prints found in the sand.

Officer Feyh testified that a scientific investigation unit officer had attempted to take a fingerprint off the Camaro, but that he did not know the results.

The State charged Rhoads with burglary of an automobile in violation of K.S.A. 1992 Supp. 21-3715, theft in violation of K.S.A. 21-3701, and criminal damage to property contrary to K.S.A. 1992 Supp. 21-3720. The jury trial in this case was on August 30-31, 1993. Rhoads was convicted of burglary of a motor vehicle, a class

E felony at the time, and theft and criminal damage to property, both class A misdemeanors.

Rhoads raises three issues on appeal. First, did the trial court err when it held an in-chambers conference with counsel to address questions sent to the court by the jury during its deliberations? Second, is there sufficient evidence to sustain a conviction? And, third, did the trial court fail to follow the Kansas Sentencing Guidelines Act in passing sentence upon Rhoads?

After beginning deliberations on the second day of the trial, the jury sent three questions to the judge. The court consulted with counsel for both the State and Rhoads by using an in-chambers telephone conference. All three agreed upon the answers for the jury. Rhoads had left the courthouse at this time and was not present during the conference call. He now contends that his absence from the conference violated his right to be present at all stages of the proceedings against him as provided by K.S.A. 22-3405(1).

The law provides that Rhoads has a right to be present at all major stages of his trial. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be present. K.S.A. 22-3405(1) codifies that guarantee in Kansas. It states:

"The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law. In prosecutions for crimes not punishable by death, the defendant's voluntary absence after the trial has commenced in such person's presence shall not prevent continuing the trial to and including the return of the verdict."

The Kansas Supreme Court in *State v. Mantz*, 222 Kan. 453, 565 P.2d 612 (1977), ruled that a defendant need not be present at an in-chambers conference between the trial court and counsel where discussions about instructions occurred, if the trial court made no final decision about the instructions during the conference. The court also ruled that a defendant need not be present during "off the record discussions between court and counsel at the bench involving only matters of law where a defendant's presence is not essential to a fair and just determination of some substantial issue." 222 Kan. at 463-64.

Since *Mantz*, subsequent cases have held that a defendant must be present: (1) when the jury is in the courtroom or (2) where the defendant's presence is essential to a fair and just determination of a substantial issue. See *State v. Knapp*, 234 Kan. 170, 179-80, 671 P.2d 520 (1983); *State v. Sanders*, 227 Kan. 892, 893-94, 610 P.2d 633 (1980); *State v. Sandstrom*, 225 Kan. 717, 721, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979); *State v. Antwine*, 4 Kan. App. 2d 389, 400-01, 607 P.2d 519 (1980). Furthermore, where an in-chambers conference involves only a question of law, the defendant's presence is not essential to a fair and just determination of a substantial issue. See *Knapp*, 234 Kan. at 180; *State v. Marks*, 231 Kan. 645, 651, 647 P.2d 1292 (1982); *Sanders*, 227 Kan. at 894; *Mantz*, 222 Kan. at 464; *Antwine*, 4 Kan. App. 2d at 400-01.

The first question posed by the jury was, "What happens if jurors cannot come to a verdict?" The court responded, "The Court will declare a mistrial and the case will be tried to another jury." The second question asked, "In count 1, please clarify, 'knowing entry' "; and "Does alleged *[sic]* has *[sic]* to be seen physically entering in order to convict?" The court answered, "You must find beyond a reasonable doubt that the defendant entered the vehicle and that he did so intentionally and not by accident or inadvertence. You are to decide this question from the evidence presented." And the third question asked by the jury was, "Is it normal procedure in police investigation in this type of theft to not to dust the *[sic]* fingerprint?" The court's answer was, "The Court cannot answer this question as it does not involve issues in the case."

The conference between the trial court and attorneys took place outside the presence of the jury. After deciding the answers, the trial court then noted that Rhoads was not present in chambers. The following discussion occurred:

"MR. KESSLER: He told me he was going to walk down to Town Crier. I told him to come back at 9:30 and check with Allis.

"THE COURT: Do you waive his appearance here?

"MR. KESSLER: I would waive it, if he's not out in the hall. I don't foresee a big problem with that.

"THE COURT: We'll have to keep the jury waiting another 10 or 15 minutes probably.

"MR. KESSLER: Well, yeah, I don't think he needs to be there.

"THE COURT: Okay.

"MR. KESSLER: I'll waive it and you can make a note of that so there isn't—

"THE COURT: Oh, yeah, we've been on the record here.

"MR. KESSLER: Okay.

"THE COURT: All right. Thank you all."

The questions from the jury are clearly questions of law. Rhoads' presence was not essential to a fair and just determination of the jury's questions. Furthermore, the record clearly shows that Rhoads' counsel waived Rhoads' right to be present at the in-chambers conference and that he was therefore voluntarily absent as contemplated by K.S.A. 22-3405(1).

Rhoads contends that there was insufficient evidence to sustain a conviction in his case. The main question at his trial was the identity of the man that Officer Feyh originally saw near the automobile that was the object of the burglary.

Rhoads argues that the jury must have drawn inferences upon inferences to find him guilty because of the lack of evidence in his case. The fact that canine officer Dukes "looked up" at him, Rhoads contends, proves nothing. Rhoads argues that the limited opportunity that Officer Feyh had to observe the suspect makes his in-court identification of Rhoads unreliable. Rhoads contends that any person's tennis shoes could have made those footprints next to the Camaro. He also argues that there was no evidence connecting him with the compact disc case found in the field.

Rhoads mistakenly relies upon *State v. Williams*, 229 Kan. 646, 630 P.2d 694 (1981), to support his position. However, that case deals with presumptions, which Rhoads confuses with circumstantial evidence. A presumption is an assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or group of facts found or otherwise established in the action. K.S.A. 60-413. In the criminal law, a presumption may not rest on presumptions or inferences on inferences. See *State v. Clemons*, 251 Kan. 473, 486, 836 P.2d 1147 (1992). In a criminal case, a trier of fact is free to consider or reject a presumption. 251 Kan. at 487. However, circumstantial evidence is different.

"Circumstantial evidence is testimony not based on actual personal knowledge or observations of the facts in the controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. [Citation omitted.] Circumstantial evidence is used to show the existence of a principal fact. It is well established in this jurisdiction that a conviction of even the gravest offense may be sustained by circumstantial evidence. [Citation omitted.]

"When considering the sufficiency of circumstantial evidence to sustain a conviction of a crime the question on appeal is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That question was for the jury and the trial court. When the sufficiency of circumstantial evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." 251 Kan. at 487-88.

Rhoads contests the accuracy of Officer Feyh's identification of him as the same man Feyh had seen three to five minutes earlier fleeing the scene. Rhoads also contests Officer White's interpretation of canine officer Dukes' actions to be an identification of him as the proper suspect. Rhoads also challenges Feyh's identification of the footprints found near the Camaro as matching Rhoads' shoes.

The testimony of Officers Feyh and White leads to the conclusion that Rhoads was the man seen fleeing from the burglarized Camaro. Rhoads' height, body frame, and clothing matched or were similar to that of the suspect. Furthermore, some stolen property was found in the field through which Rhoads fled. The jury obviously found Feyh and White to be credible witnesses. "It is the jury's function, and not an appellate court's, to weigh the evidence and pass upon the credibility of witnesses." *State v. Holley*, 238 Kan. 501, 511, 712 P.2d 1214 (1986). The evidence here is sufficient for a rational factfinder to find Rhoads guilty beyond a reasonable doubt.

Originally, on November 9, 1993, the court sentenced Rhoads to an indeterminate one- to five-year sentence for the automobile burglary conviction and six months on each misdemeanor charge. The sentences were concurrent. The court did not then determine Rhoads' criminal history classification or compute his sentence under the Kansas Sentencing Guidelines Act. Rhoads did not re-

ceive probation, but the court suspended his sentence and ordered him to serve "no less than 180 days" in the Labette Conservation Camp.

The State filed a request for a departure sentence on February 2, 1994. The court passed sentence on Rhoads again on February 11, 1994. This sentence was again an indeterminate sentence of 12 to 60 months for the automobile burglary conviction. The trial court found that Rhoads had committed a level 9 nonperson felony and had a criminal history category E. The trial court set a post-release supervision period of 24 months and marked the journal entry to show the 24-month period as a dispositional departure from the guidelines. In the aggravating factors section of the sentencing journal entry, the court marked the "Other" box and noted: "Defendant was unsuccessful with previous probation and also has extensive criminal history." The court also ordered Rhoads to pay $1,100 in restitution to Frederick. The second sentencing did not address the misdemeanor counts. The court also entered a dispositional departure in this case by denying Rhoads presumptive probation at the second sentencing. The sentencing guidelines call for a determinate 9, 10, or 11-month prison sentence with presumed probation for a severity level 9 category E conviction of a nondrug crime. The guidelines also call for a 12-month post-release supervision period for a severity level 9 crime. K.S.A. 1993 Supp. 21-4704.

This case must be returned to the trial court for resentencing for three reasons. First, during the second sentencing hearing, the trial court failed to impose a sentence for the misdemeanor counts II and III. Second, the trial court failed to properly make findings sufficient for a dispositional or durational departure sentence. And, third, the court failed to impose a determinate sentence.

Counts II and III are class A and B misdemeanors respectively, punishable by a term of confinement up to one year for count II and six months for count III and by imposition of a fine. The length and location of Rhoads' possible incarceration are determined by whether his misdemeanor sentences are to be served consecutive to or concurrent with each other and consecutive to or concurrent with the felony sentence.

The Kansas Supreme Court in *State v. Thomas*, 239 Kan. 457, 460, 720 P.2d 1059 (1986), defined the act of passing sentence:

"The pronouncement of sentence or rendition of judgment is a judicial act of the sentencing judge, as distinguished from the entry of the judgment, which is a ministerial act of preparing the record for judgment.

"An illegal sentence is either a sentence imposed by a court without jurisdiction; a sentence which does not conform to the statutory provisions, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served. . . .

. . . .

"Clerical mistakes within the record include typographical errors, incorrect statute numbers, failure to include the statute number, failure to state additional true matter, formal or clerical errors and entries concerning matters of procedure. Such omission or errors are correctable by nunc pro tunc orders."

A trial court's failure to impose sentence on two misdemeanor counts when the defendant was convicted of two misdemeanor counts and one felony makes the entire sentence ambiguous and therefore illegal.

The second reason that Rhoads must be resentenced is that the trial court failed to set forth substantial and compelling reasons for departing from a guidelines sentence.

Rhoads' sentence was subject to the limited retroactivity provision of K.S.A. 1993 Supp. 21-4724 because he was convicted of a severity level 9 nondrug felony, even though he committed his crimes before July 1, 1993, but was sentenced after that date. K.S.A. 1993 Supp. 21-4724(f) requires that the computation of his sentence conversion is to be done by the trial court and not the Department of Corrections.

If, after July 1, 1993, a trial court is to depart from the sentencing guidelines in making a retroactive sentence conversion for a crime committed prior to July 1, 1993, it must comply with the departure criteria provided in the Kansas Sentencing Guidelines Act. Those criteria are set out in K.S.A. 1993 Supp. 21-4716 through K.S.A. 1993 Supp. 21-4719. This is consistent with the holding in *State v. Gonzales*, 255 Kan. 243, 874 P.2d 612 (1994). There the Supreme Court held that for offenses committed prior to July 1, 1993, and sentenced prior to July 1, 1993, conversion

was mandatory and that departure provisions of the Sentencing Guidelines Act must be followed.

"We believe that the legislative intent in adopting the retroactivity provision of the Sentencing Guidelines Act was to make conversion mandatory and that the provisions in K.S.A. 1993 Supp. 21-4724(d) require the trial court to settle any disputes concerning criminal history and to impose a sentence within the correct grid box just as if the trial judge were imposing an original sentence under the guidelines. The trial judge may consider any information available as of the original sentencing date that he or she could have considered in imposing an original sentence under the guidelines, and the trial judge may depart from the guidelines. Any departure must be consistent with the departure provisions of the guidelines, and a parole or probation violation after the original sentencing date may not be considered in converting the sentence. Any departure must be justified by the trial court by written findings and an order as required by the guidelines. " 255 Kan. at 250.

The same reasoning should apply to sentence conversions done after July 1, 1993. To do otherwise would be unfair and incongruous.

Appellate review of a guidelines departure sentence must be on a case-by-case basis, for what is compelling in one case may not exist in the next. The only reason given by the trial court for imposing a departure sentence here was that "[d]efendant was unsuccessful with previous probation and also has extensive criminal history." The trial court did not point out any of the aggravating factors listed in K.S.A. 1993 Supp. 21-4716(b)(2).

K.S.A. 1993 Supp. 21-4716(a) of the Kansas Sentencing Guidelines Act states that a sentencing judge "shall impose the presumptive sentence provided by the sentencing guidelines . . . unless the judge finds substantial and compelling reasons to impose a departure." The term "substantial" here refers to something that is real, not imagined, something with substance and not ephemeral. The term "compelling" here implies that a court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. Examples of the term can be found in *State v. Phillips*, 252 Kan. 937, 943, 850 P.2d 877 (1993), where aggravating circumstances can "compel" the outweighing of mitigating circumstances; *State v. Macomber*, 244 Kan. 396, 405, 769 P.2d 621, *cert. denied* 493 U.S. 842 (1989), which holds

that a trial court must have articulable "compelling" reasons for not using PIK instructions; and *State v. Williams*, 15 Kan. App. 2d 656, 666, 815 P.2d 569 (1991), which states some "compelling need" must exist for the State to be allowed to obtain certain types of body fluids from a defendant.

The guidelines already take into account the criminal history of a defendant by providing different sentences in the different category boxes on the grid. A defendant with a more extensive criminal history receives a longer sentence for the same crime than a defendant with fewer convictions. A sentencing court, when departing from a guidelines sentence, must state more substantial and compelling reasons than a conclusion of "has extensive criminal history" to depart from the guidelines.

The fact that a defendant has failed on probation in prior cases may be a substantial and compelling reason for a dispositional or durational departure sentence, but the trial court must articulate reasons why it is compelled to depart that are real and not just conclusions. What is it about the fact that Rhoads' probation had been revoked once that compels the trial court to depart from the guidelines in this case? The record is silent in this regard.

The 24-month post-release supervision period prescribed by the trial court in this case is also a departure from the 12-month presumptive post-release supervision period which the guidelines call for in a conviction for a severity level 9 nondrug felony. K.S.A. 1993 Supp. 22-3717(d)(1)(B). In order to depart from a guidelines presumptive post-release supervision period, a trial court must find substantial and compelling reasons. Such a departure is subject to appeal pursuant to K.S.A. 1993 Supp. 21-4721. See K.S.A. 1993 Supp. 22-3717(d)(1)(C)(ii). The trial court made no findings in this regard.

Finally, trial courts no longer have the option to impose an indeterminate sentence after the passage of the Kansas Sentencing Guidelines Act for crimes designated on the sentencing grids. K.S.A. 1993 Supp. 21-4704 and -4705. Sentences expressed in each grid represent months of imprisonment. K.S.A. 1993 Supp. 21-4704(b).

We affirm the convictions of Rhoads, vacate the sentence, and remand the case for resentencing.