NOT DESIGNATED FOR PUBLICATION

No. 123,974

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BAYLOR DERRICK REED,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; PENNY R. MOYLAN, judge. Opinion filed March 4, 2022. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-At-Law, of Lawrence, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., HILL and ISHERWOOD, JJ.


PER CURIAM:  After a bench trial, the district court found Baylor Derrick Reed guilty of two misdemeanor offenses, criminal restraint and criminal damage to property. The charges arose from an incident at a gas station where Reed argued with Mallorie Creollo, grabbed the lanyard on her keys, pulled hard enough to break the key off in the ignition, and prevented her from leaving by entering her vehicle. On appeal, Reed argues the State failed to present sufficient evidence to enable the court to find him guilty of the two crimes beyond a reasonable doubt. The law prohibits us from accepting Reed's invitation to reweigh the evidence, reassess witness credibility, and reconcile conflicting

1

evidence. A review of the evidence in a light most favoring the State, as required by the governing standard of review, reveals the State presented sufficient evidence to enable a reasonable finder of fact to arrive at a conclusion of guilt beyond a reasonable doubt for the charged offenses.

FACTUAL AND PROCEDURAL BACKGROUND

Mallorie Creollo received a flurry of text messages and calls from Baylor Reed during the early morning hours of March 5, 2020. Creollo was at home, where she lived with her parents and her newborn daughter that she shared with Reed. Despite the extraordinarily inopportune hour, Reed requested to come by the house and meet his daughter for the first time. Creollo declined and told Reed they needed to set a different date and time for the two to meet.

Reed remained persistent. Creollo knew he had impulsive tendencies and in an effort to placate him and preempt his uninvited arrival at the house, she offered to meet him at a nearby gas station. Reed seemed satisfied with that compromise.

Creollo drove to the gas station and Reed arrived a short time later with his friend, Vincent Gonzalez-Rook. Gonzalez-Rook went into the gas station while Reed walked over to meet Creollo. Creollo remained in her vehicle but rolled the window down to chat with Reed. They shared a civil conversation at first. Creollo offered general information about their daughter but reiterated that Reed could not see her in those early morning hours. Creollo's continued refusal to allow him to see their child severely angered Reed, so Creollo told him she intended to leave. He yelled that she was not going anywhere and tried to grab her keys to make good on his declaration. The key was still in the ignition then and Reed yanked on its lanyard hard enough to snap the key in two.

The two continued to struggle over the lanyard and, at one point, Reed tried to pull her out of the vehicle. Creollo kicked at him and tried to strike him with a pocketknife, but she missed and cut her hand. She told Reed she wanted to leave and attempted to roll up her window multiple times, but he prohibited her from doing so.

Creollo briefly exited the vehicle to try to retrieve her lanyard but soon both she and Reed ended up back in the vehicle. Reed put his hands around her throat and screamed that he intended to break her neck and throw her in the river. Creollo managed to wrench free of his grasp and flee the vehicle. She ran around to the front of the building and found a customer, Ryan Penry, sitting in his vehicle. Creollo knocked on his window and pleaded with him to give her a ride because Reed intended to kill her. She gave Penry directions to her parents' home and called her father en route to explain the situation. She advised him to call the police because Reed was likely headed to their home. Penry eventually dropped Creollo off and she scurried inside to be with her mother and daughter. As expected, Reed arrived at the house moments later.

Deputy Devin Maxwell of the Shawnee County Sherriff's Office responded to the dispatch to the Creollo residence to address an "unwanted subject" at the home. Upon Maxwell's arrival he encountered Reed yelling at the door of the residence. He asked Reed to offer his take on the situation and Reed explained he simply wanted to speak to the mother of his child. Maxwell advised Reed to just get a ride home.

Around this time, other deputies arrived and spoke with Creollo and her parents. They took several photographs of Creollo, including one that depicted a small wound on her hand. According to Creollo, the wound occurred when she and Reed were fighting in her vehicle. Two other photos showed a leg injury that Creollo said occurred as Reed tried to pull her out of the vehicle.

3

The other deputies informed Deputy Maxwell that the incident began earlier at a different location and that it was a domestic dispute. When asked about this, Reed told Maxwell that he met Creollo earlier at a gas station to talk. By contrast, Creollo told the deputy that earlier conversation escalated into physical violence, which entailed "a hand-to-hand, pushing, pulling kind of thing inside the car." Maxwell noticed cuts to Creollo's hand as she shared her account.

After speaking with Creollo, Deputy Maxwell resumed his conversation with Reed. Reed denied touching Creollo other than to acknowledge he may have brushed up against her at one point. Given that Creollo claimed to have caused injuries to Reed's back and torso during the struggle, the deputy asked Reed to raise his shirt to inspect for injuries of the same, but he did not see any wounds. Maxwell then placed Reed under arrest for domestic battery.

The State charged Reed with criminal restraint, a class A person misdemeanor, battery, a class B person misdemeanor, and criminal damage to property (less than $1,000), a class B nonperson misdemeanor. Reed's case proceeded to a bench trial at which Creollo, Penry, and Deputy Maxwell testified for the State, while Reed called Gonzalez-Rook as his only witness.

Gonzalez-Rook provided an alternative account of the gas station brouhaha. He testified that Reed and Creollo spoke by her vehicle while he filled his car up with gas. He informed the court that he heard Creollo screaming at Reed at one point and then saw her slap his hands away from her windowsill. Gonzalez-Rook also testified that he sought to physically remove Reed from the situation, but he resisted. He then witnessed Creollo swing at Reed and try to gouge him with her car keys. According to Gonzalez-Rook, Reed reacted to the attack by snatching Creollo's keys from her hand and throwing them in a nearby ditch. Gonzalez-Rook claimed to not witness any other physical interaction between the two during their altercation.

4

The district court acquitted Reed of the battery charge but found him guilty of criminal restraint and criminal damage to property. The court explained it did not find that Creollo's statements about the criminal restraint were "incredibly inconsistent." It noted:

> "Her testimony is that she was trying to leave. That [Reed was] preventing her from leaving. I think there's even some testimony from Mr. [Gonzalez-Rooks] that would also corroborate that with [Reed's] hands on her car."

Similarly, the court found Creollo provided credible testimony to support the criminal damage to property offense:

> "And the State has sustained its burden to prove beyond a reasonable doubt that [Reed] did knowingly and unlawfully destroy or impair the use of property, [the] key, to which she has an interest."

In support of its conclusion for the battery charge, the court explained that Creollo's testimony prompted a finding that those wounds were self-inflicted and that the tug of war over the lanyard could not sustain a verdict of guilty beyond a reasonable doubt.

The court sentenced Reed to six months in jail for the criminal restraint conviction, to be served concurrent with a six-month jail term for the criminal damage to property conviction.

Reed timely appealed.

ANALYSIS

DID THE STATE PRESENT SUFFICIENT EVIDENCE TO ESTABLISH THAT REED COMMITTED CRIMINAL RESTRAINT?

On appeal, Reed argues the State failed to present sufficient evidence to support a finding of guilt beyond a reasonable doubt for either offense with which he was charged.

*Standard of Review*

"When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. This court has also recognized that there is no distinction between direct and circumstantial evidence in terms of probative value. "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." [Citations omitted.]'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Reed first challenges the court's conclusion regarding the criminal restraint charge. In order to sustain a conviction for that offense the State carried the burden to prove that Reed knowingly and without legal authority restrained Creollo so as to substantially interfere with her liberty, in violation of K.S.A. 2020 Supp. 21-5411.

Reed does not attack his conviction through a specific elements-based challenge. Rather, he sets forth an account of the encounter with Creollo that only uses the details provided in Gonzalez-Rook's testimony as the factual framework. He directs us to four propositions in support of his contention that his conviction must be reversed.

First, Reed points out that Creollo voluntarily agreed to meet him at the gas station to discuss arrangements for him to meet his daughter. We do not find this fact compelling because the offense for which he stands convicted criminalizes unlawful actions that involve restraining a person so as to interfere with their liberty. It is irrelevant whether the victim first consented to being in the offender's presence. Reed does not direct us to any authority, or even offer a substantive argument, that Creollo's voluntary arrival obviates his criminal liability.

Second, Reed emphasizes that he remained outside Creollo's vehicle throughout the encounter. To support this claim, he notes that Gonzalez-Rook testified that Reed was outside the car. The State, on the other hand, outlines an account of the meeting that includes Creollo's testimony. It highlights that Reed entered the vehicle, put his hands around her throat, and threatened to kill her. Deputy Maxwell testified that Creollo told him that Reed entered her vehicle and a physical altercation ensued. Reed's argument that he never entered Creollo's vehicle is a thinly veiled suggestion that Gonzalez-Rook's testimony carries greater credibility than Creollo's and, therefore, we should substitute this credibility determination for that of the district court. This court is expressly not permitted to do so. *State v. Timms*, 29 Kan. App. 2d 770, 775, 31 P.3d 323 (2001) (declining to reweigh witness credibility in a criminal restraint bench trial).

Third, Reed suggests that Creollo could have driven away. This suggestion assumes as a fact that he never entered Creollo's vehicle as she claimed. His argument is also undermined by conflicting accounts over Creollo's keys. Gonzalez-Rook testified that he witnessed Reed throw Creollo's keys into a nearby ditch. Creollo testified that Reed broke her key off in the ignition and the sensor required to enable her car to move remained on the lanyard in Reed's possession. So even under Reed's version of the facts, he deprived Creollo of her ability to leave the moment he threw her keys. The evidence adduced also revealed Creollo could not have driven off at any time because Reed continually reached into her vehicle, tried to pull her out of the vehicle, entered the

vehicle, and placed his hands around her neck. Notably, and as the district court pointed out, Gonzalez-Rook corroborated Creollo's testimony that Reed placed his hands on her driver's door windowsill. This portion of Reed's argument is yet another proposal that we should reevaluate witness credibility and reweigh evidence to arrive at an alternate conclusion. That type of analysis is not allowed under our governing standard of review.

Fourth, and relatedly, Reed argues that there is no direct evidence that he broke the key. Reed's contention hinges on Gonzalez-Rook's testimony that Creollo swung at Reed and jabbed at him with her keys, while simultaneously dismissing Creollo's testimony that Reed grabbed her lanyard and broke the key. Though it is true that the photograph in evidence depicting the broken key does not clarify how the key was broken, it is, though, equally true that both accounts were presented to the fact-finder.

The factual foundation Reed relies on to buttress his argument is narrowly tailored to match the narrative of his own choosing. The hurdle he is simply unable to overcome is that the district court already heard and weighed the evidence and deemed the State's account more credible. Because this court may not reassess witness credibility, reweigh evidence or reconcile conflicting evidence, Reed is foreclosed from prevailing on this claim. See *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016); see also *State v. Morris*, No. 121,388, 2020 WL 2602035, at *2 (Kan. App. 2020) (unpublished opinion) (noting appellate courts cannot "reweigh the evidence, resolve evidentiary conflicts, or assess the credibility of witnesses" in criminal restraint cases when reviewing for sufficiency of the evidence); *State v. Hefele*, No. 118,368, 2018 WL 4168658, at *8 (Kan. App. 2018) (unpublished opinion) (same).

The proper inquiry is, when the trial evidence is viewed in a light favoring the State, whether a rational trier of fact, in this case the district court, could find that evidence sufficient to convict Reed of criminal restraint. See *Daws*, 303 Kan. at 789; see

also *State v. Frye*, 294 Kan. 364, 374, 277 P.3d 1091 (2012) (holding that the sufficiency of the evidence standard is the same for bench trials and jury trials).

Here, the district court appropriately weighed the evidence presented at trial and contemplated Creollo's testimony alongside that offered by Gonzalez-Rook. It concluded that Creollo's testimony was not "incredibly inconsistent" and, after hearing from all four witnesses, relied on Creollo's testimony that she tried to leave but Reed prevented her from doing so. The court heard evidence that Reed broke off Creollo's key, entered her vehicle, and threatened to kill her. It also heard testimony that this encounter led her to flee and plead for a ride home from a complete stranger because the man chasing her intended to kill here. Considering all this evidence, we have no reservations in concluding that a rational fact-finder could determine Reed was guilty beyond a reasonable doubt of criminal restraint. The decision of the district court is affirmed.

### DID THE STATE PRESENT SUFFICIENT EVIDENCE THAT REED COMMITTED CRIMINAL DAMAGE TO PROPERTY?

Reed next argues the State neglected to offer sufficient evidence to find him guilty beyond a reasonable doubt of criminal damage to property in violation of K.S.A. 2020 Supp. 21-5813(a)(1). Again, when analyzing the sufficiency of the evidence, we view the evidence in a light favoring the State and must determine whether a rational fact-finder could have arrived at a conclusion of guilt beyond a reasonable doubt. *Daws*, 303 Kan. at 789. In the process we may not reconcile conflicting evidence, reassess witness credibility, or reweigh evidence. 303 Kan. at 789.

To sustain a conviction for this offense, the State had the burden to establish that Reed knowingly damaged, destroyed, defaced, or substantially impaired, by means other than by fire or explosive, the use of any property in which another has an interest without the consent of such other person. See K.S.A. 2020 Supp. 21-5813(a)(1).

9

Reed argues the State's evidence fell short in two respects, that it failed to demonstrate culpability and neglected to prove the requisite mental state. That is, it failed to establish, beyond a reasonable doubt, that he bore responsibility for the broken key and that he damaged it "knowingly."

Turning to the first question, whether Reed broke the key, Reed contends that the State failed to prove this element beyond a reasonable doubt because "[t]he only hard evidence presented was a picture of the broken key." He again isolates Gonzalez-Rook's testimony that he was standing outside Creollo's window when she swung at him and tried to poke him with her keys. Reed argues that, at that point, he grabbed her keys and threw them into a ditch. He acknowledges, but dismisses, Creollo's testimony that he reached into her vehicle, grabbed the lanyard, and broke off the key.

Reed's argument amounts to another improper request for this court to reweigh evidence and make credibility determinations. As the State points out, Creollo read her written police statement aloud during the trial. That statement mirrored her trial testimony that Reed broke her key. The district court relied on this corroboration, noting "Ms. Creollo's testimony again in the statement to officers and her statements today, I am going to find her testimony is credible." Thus, the fact-finder considered appropriate evidence and determined that Reed broke off the key. As already noted, this court may not undermine that determination with its own assessment of the factors that provided the foundation for that conclusion. *Daws*, 303 Kan. at 789.

Moreover, Creollo's testimony is enough to enable us to uphold Reed's conviction because reviewing courts may affirm in the face of sufficiency of the evidence challenges even when the conviction at issue is only supported by circumstantial evidence. See *State v. Rhoads*, 20 Kan. App. 2d 790, 795-96, 892 P.2d 918 (1995); *State v. Gunther*, No. 113,880, 2016 WL 3407858, at *4 (Kan. App. 2016) (unpublished opinion) (verdicts "may be supported by circumstantial evidence" so long as the evidence "provides a basis

from which the factfinder may reasonably infer the existence of the fact in issue"). When affirming based on circumstantial evidence, "the evidence need not exclude every other reasonable conclusion or inference." *Gunther*, 2016 WL 3407858, at *4.

For example, in *State v. Bowen*, No. 116,296, 2017 WL 4558555, at *1 (Kan. App. 2017) (unpublished opinion), this court affirmed a criminal damage to property conviction for damage Bowen caused to his neighbor's barbed wire fence. After discovering the extensive damage, the neighbor called the police and suggested that Bowen and his brother were involved because they had a history of threatening the neighbor and trespassing on or destroying his property. The district court found Bowen guilty of misdemeanor criminal damage to property following a bench trial. Bowen pursued a direct appeal and advanced three arguments, one of which challenged whether the State presented sufficient evidence to sustain his conviction. This court rejected Bowen's argument, explaining:

> "Although the State did not offer direct evidence that Bowen damaged [neighbor's] property—in other words, no one saw him do it—the State provided enough circumstantial evidence for a reasonable fact-finder to infer that due to Bowen's longstanding animosity towards [neighbor] over Virginia Bowen's property line, he knowingly damaged [neighbor's] barbed-wire fence. Sufficient evidence supports the conviction." *Bowen*, 2017 WL 4558555, at *4.

Here, the State presented direct evidence of Reed's culpability in the form of Creollo's statements that she specifically observed Reed break the key. To buttress that evidence, it offered a bevy of circumstantial evidence including a photograph of the broken key, Penry's testimony that Creollo ran to his vehicle and pleaded with him to drive her to safety, Creollo's testimony about Reed's impulsive tendencies and her fear of him, as well as Gonzalez-Rook's testimony that Reed had his hands on Creollo's windowsill, that Reed and Creollo shouted at each other during the altercation, and that Reed refused to leave despite Gonzalez-Rook's attempts to physically remove him from

11

the argument. Based on this full body of evidence, a fact-finder could reasonably conclude that Reed bore responsibility for damaging Creollo's key.

We next turn our attention to the mens rea question Reed raised. The State correctly points out that K.S.A. 2020 Supp. 21-5202(i) defines "knowingly" as follows:

> "(i) A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes."

This court clarified the mens rea element of the criminal damage to property statute in *In re D.A.*, 40 Kan. App. 2d 878, 892, 197 P.3d 849 (2008). The case involved juveniles convicted of burglary and criminal damage to property following the vandalization of a church. On appeal, D.A. argued that his status as a juvenile with diminished capacity undercut the State's ability to secure a conviction for criminal damage to property. This court disagreed and explained the offense at issue is a general intent crime, meaning "the only intent the State needed to prove to convict D.A. was that D.A. purposefully or knowingly caused damage to the church." 40 Kan. App. 2d at 892; see K.S.A. 2020 Supp. 21-5202(i). The court explained that "so long as D.A.'s actions inside the church were not accidental or involuntary, he possessed the required culpable intent." 40 Kan. App. 2d at 892. Other panels of this court have relied on *In re D.A.* when evaluating the "knowing" element of the criminal damage to property statute in the context of a sufficiency of the evidence challenge. See *State v. Sieg*, No. 121,863, 2021 WL 1324018, at *5 (Kan. App. 2021) (unpublished opinion); *State v. Kelly*, No. 103,092, 2010 WL 4157066, at *2 (Kan. App. 2010) (unpublished opinion).

12

Put differently, K.S.A. 2020 Supp. 21-5813(a) required the State to prove Reed's awareness of the nature of his conduct or that he had a reasonable certainty regarding the consequences of his actions. See *State v. Kemp*, No. 119,069, 2019 WL 985427, at *5 (Kan. App. 2019) (unpublished opinion) (rejecting a sufficiency of the evidence claim based on the argument that Kemp did not act "knowingly" when "a fact-finder could reasonably infer that she was aware of both the nature of her conduct, and the result such conduct was reasonably certain to bring about).

Here, Creollo testified that Reed reached into her vehicle, grabbed her lanyard, and pulled hard enough to break the key. Her testimony undermines any suggestion that Reed accidentally or involuntarily grabbed the lanyard because she explained that he reached in immediately after expressing an intent to prohibit her from leaving. Thus, Reed knew that he grabbed the lanyard and was reasonably certain that by yanking on it, the key would break and stymie Creollo's efforts to flee. This evidence supports a conclusion that Reed acted knowingly. His criminal damage to property conviction is affirmed.

Affirmed.